(Decided 25th June, 1874.)

---

## Mary C. Busby *vs.* The North America Life Insurance Company.

*Life Policy— When evidence of Usage is inadmissible—Admissibility of Evidence of the extent of the Authority of an Agent— Extent of Agent's authority— What does not constitute a Waiver of Forfeiture—Principal and Agent.*

A life policy was issued for the benefit of the wife of the assured, by an insurance company located and doing business in the city of New York, having a branch office in the city of Baltimore. The branch office was in charge of a general agent who had no authority to issue policies in the name of the company, but he received applications for policies, and received from the home office in New York, executed policies to be delivered to the assured; and he was authorized to receive premiums upon delivery of policies, and renewal premiums upon delivery of receipts executed and furnished from the home office. The contract between the wife of the insured and the company was made directly between the parties thereto, without reference to the authority of the agent. Among the terms and stipulations of the policy, and with reference to which the contract was made, were the following: "And it is also understood and agreed by the assured, that in case the said

Busby *vs.* The North America Life Ins. Co.

premium shall not be paid on or before the date hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable for the payment of the sum assured or any part thereof, and this policy shall cease and determine." "The premiums are always due on the several days stipulated in the policy, and all risk to the company commences at the time of the actual payment of the first premium, without regard to the date of the policy, (unless otherwise stipulated in the policy,) and continues until the day named in the policy for the payment of the premium, at 12 o'clock, noon (or within thirty days thereafter) and no longer. No premium will be received by the company, continuing any risk, after the day named in the policy for the payment of such premium, or within thirty days thereof, unless the insured is in perfect health, and the risk continued at the entire option of the company ; and no payment of premium is binding on the company unless the same is acknowledged by a printed receipt signed by an officer of the company. All receipts of the company at any time for premiums past due, except as above, are received by the parties in interest as acts of courtesy of the company, and in no case to be considered a precedent, or a waiver of the forfeiture of the policy, according to the conditions expressed therein." A premium due on the 20th of June, 1872, was paid to the agent in Baltimore on the 28th of the same month, and at the same time a receipt signed by the proper officer of the company and counter-signed by the agent in Baltimore, in the usual form, was given as of the 21st of June, 1872. The amount of the premium thus received by the agent was remitted by him to the insurance company on or about the 1st of July following, in the regular course of business, without any communication of the fact that it had been received after the time when it was due. The husband, on whose life the policy was issued, died on the 14th of July, 1872. It was admitted that by the non-payment of the premium at the time it was due, the policy lapsed and became forfeited. In an action by the widow, on the policy, it was, HELD :

1st. That the plaintiff could not show that there existed an usage among the general agents of foreign insurance companies doing business in the city of Baltimore, and in the State generally, and among domestic insurance companies, to accept premiums after the time when they became due and payable by the terms of the policies, and to deliver to the policy holders the receipts of the companies therefor as of the date when the premiums were due.

2nd. That the plaintiff could not give evidence to show that it had been the usage of the defendant for more than ten years past, to authorize by parol license its general agents in the State of Missouri, to receive after they became due, premiums and renewal premiums, on its policies issued to

parties in that State, and to furnish such agents with receipts to be delivered to the policy holders, dated as of the time when the premiums became due, and that such usage was general and universal with the defendant's agents in that State, with the knowledge and approval of the defendant.

3rd. That it was proper for the defendant to read in evidence to the jury the contract between the defendant and its agent in Baltimore, whereby the powers and duties of the latter were defined, for the purpose of showing the extent of his authority, although the plaintiff was in no manner concluded by such contract—she being at liberty to rely either upon the express delegation of authority, or upon the authority as it might be inferred from the habit and course of dealing between the parties, or upon the subsequent ratification and adoption of the act of the agent by the principal.

4th. That upon the facts of the case, the agent of the defendant had no authority, by receiving the over-due premium from the plaintiff, after the lapse of the policy, to revive the same so as to bind the defendant.

5th. That the receipt of the premium by the agent, and its transmission by him to the defendant, and its retention without knowledge of any of the circumstances under which it was paid, was not a ratification by the defendant of the act of its agent so as to waive the forfeiture and revive the policy.

Where the authority of an agent of a life insurance company does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a policy which has lapsed and become void.

APPEAL from the Superior Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and ALVEY, J.

*John J. Donaldson,* for the appellant.

The evidence which was offered by the appellant to show the usage among all general agents of foreign Life Insurance companies doing business in the City of Baltimore, and in the State of Maryland, and among domestic insurance companies, was clearly admissible, as was also the

evidence to prove what had been the usage of the defendant in reference to its agents in the State of Missouri. *May on Insurance,* 434, 435.

The contract between the appellee and its agent, which was offered in evidence by the appellee, and admitted by the Court, should have been excluded. First, because it was *res inter alios.* Secondly, because the policy was not made, so far as the appellant was concerned, on the basis of the authority contained in such contract. *Story on Agency,* secs. 127, 190; 1 *Parsons on Contracts,* 49–51; 2 *Phil. Ins.,* 529; *Lister and Supplee vs. Allen,* 31 *Md.,* 547; *Woodbury Savings Bank vs. Charter Oak Ins. Co.,* 31 *Conn.,* 529.

It was within the scope of the power of the general agent to accept the premium after the day of maturity, and to bind the defendant by delivering its receipt; and the receipt of the premium and its continued retention by the defendant, under the circumstances of the case, amounted to, and was a waiver by the defendant of the forfeiture arising from the non-payment of the premium at maturity. *May on Ins.,* 145, 146; 2 *Phillips' Insurance,* 529; 1 *Parsons on Contracts,* 41–51; *Sheldon vs. Conn. Mutual Ins. Co.,* 25 *Conn.,* 207; *Bouton vs. Am. Mutual Life Ins. Co.,* 25 *Conn.,* 542; *Eastern Railroad Co. vs. Relief Ins. Co.,* 570; 1 *Bigelow on Insurance,* 27, 38, 39, 40, 51, 218, 522; 2 *Bigelow on Insurance,* 81–108; *Campbell vs. The International Life Assurance Society of London,* 4 *Bosworth,* 298; *New York Central Ins. Co. vs. National Protection Ins. Co.,* 20 *Barb.,* 469; *Post vs. Ætna Ins. Co.,* 43 *Barb.,* 351; *N. E. Fire and M. Ins. Co. vs. Schettler,* 38 *Ill.,* 170; *Miller vs. Life Ins. Co.,* 12 *Wall.,* 285; *Boehen vs. Williamsburgh Ins. Co.,* 35 *New York,* 131; *Lycoming County Mu. Ins. Co. vs. Schollenberger,* 44 *Penn.,* 259; *People's Ins. Co. vs. Spencer,* 53 *Penn.,* 353; *Wing vs. Harvey,* 27 *Eng. Law and Eq.,* 144.

*Orville Horwitz*, for the appellee.

The policy on which this action was brought, constitutes the contract between the parties, and by its terms the agent was not authorized to waive a forfeiture or to change its provisions, and of this the plaintiff had notice. Snell was only an agent to receive applications. That is conceded by the plaintiff's proof, and by the mode in which this policy was effected. Such an agent has no power to waive a forfeiture. *Bouton vs. Am. Mutual Life Ins. Co.*, 25 *Conn.*, 542 ; *Wall, et al. vs. The Home Ins. Co.*, 8 *Bosworth*, 597, 602 ; *Catoir vs. Am. Life Ins. and Trust Co.*, 33 *N. J.*, 487.

Independently of the terms of the contract itself, the letter of June 15, 1872, gave special notice, that, after the lapse of the policy on 20th June, the agent had no power to waive a forfeiture by accepting the premium.

An agent, no matter how broad or general his powers, must not act directly in the teeth of the object of his employment and against his employer's interest. *Grant vs. Norway*, 10 *C. B.*, 665, (70 *Eng. C. L.*;) *Hubbersty vs. Ward*, 8 *Ex.*, 330 ; *Coleman vs. Riches*, 29 *Eng. L. & E.*, 323 ; *Adams Exp. Co. vs. Trego*, 35 *Md.*, 66, 67.

The receipt of the premium by the home office on 1st or 2nd July, in the regular course of business, without knowledge of the facts and circumstances, did not operate as a waiver. *Stm. Navigation Co. vs. Dandridge*, 8 *G. & J.*, 323 ; *Adams Exp. Co. vs. Trego*, 35 *Md.*, 69.

The failure to return the premium immediately after the facts and circumstances came to the knowledge of the home office, cannot operate as a waiver, because that knowledge was received long after the death of the insured.

In order to constitute a waiver, the office "must do some act which induced the assured to do or refrain from doing something, and by which he is or may be damaged." *Bliss on Ins.*, sec. 261.

"But, where, at the time the acts were done or the declarations made by the company, which are alleged to con-

stitute a waiver or estoppel, the assured could not, in consequence thereof, by any possibility have been damaged, there is in law no waiver." And there can, therefore, be no waiver of forfeiture after the death of the insured. *Mutual Benefit Life Ins. Co. vs. Ruse*, 8 *Ga.*, 534.

ALVEY, J., delivered the opinion of the Court.

This was an action on a policy of insurance, taken on the life of John R. Busby, by and for the benefit of his wife, Mary C. Busby.

In the course of the trial below, several exceptions were taken by the appellant; some to rulings upon questions as to the admissibility of evidence, and others as to rulings with respect to prayers which were offered by the parties for instructions to the jury.

The policy sued on was issued in 1869, by the appellee, an insurance company located and doing business in the city of New York, having a branch office in the city of Baltimore. Its branch office was in charge of a general agent, who does not appear to have had any authority to issue policies in the name of the appellee, but he received applications for policies, and received from the home office in New York, executed policies, to be delivered to the parties insured; and he was authorized to receive premiums upon delivery of policies, and renewal premiums upon delivery of receipts executed and furnished from the home office. The contract between the appellant and appellee, which is evidenced by the policy, was made directly between the parties thereto, without reference to the authority of the agent.

Among the terms and stipulations of the policy, and with reference to which the contract was made, are the following: "And it is also understood and agreed by the assured, that in case the said premium shall not be paid on or before the date hereinbefore mentioned for the payment thereof, then, and in every such case, the said company

shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine." "The premiums are always due on the several days stipulated in the policy, and all risk to the company commences at the time of the actual payment of the first premium, without regard to the date of the policy, (unless otherwise stipulated in the policy,) and continues until the day named in the policy for the payment of the next premium, at 12 o'clock, noon, (or within thirty days thereafter,) and no longer. No premium will be received by the company, continuing any risk, after the day named in the policy for the payment of such premium, or within thirty days thereof, unless the insured is in perfect health, and the risk continued at the entire option of the company; and no payment of premium is binding on the company, unless the same is acknowledged by a printed receipt signed by an officer of the company. All receipts of the company at any time for premiums past-due, except as above, are viewed by the parties in interest as acts of courtesy of the company, and in no case to be considered a precedent, or a waiver of the forfeiture of the policy, according to the conditions expressed therein."

Premiums had all been paid and receipted for, until that due on the 20th of June, 1872; and this last premium was paid to the general agent in Baltimore, on the 28th of June, 1872, and, at the time, a receipt in the usual form given, as of the date of the 21st of June, 1872. The amount of the premium thus received by the agent was remitted by him to the appellee on or about the 1st of July following, in the regular course of business, without any communication, however, of the fact that it had been received of the appellant after the time when it was due by the terms of the policy. The husband of the appellant, on whose life the policy was issued, died on the 14th of July, 1872.

The receipt furnished the appellant on payment of the last premium, on the 28th of June, 1872, was signed by

the proper officer of the appellee, and countersigned by the general agent in Baltimore, in the usual form.    It was the habit of the appellee to send such receipts to the general agent, partly filled up and signed by the proper officer, a month or more prior to the times when premiums became due on policies within the agency, to be countersigned by the general agent, and delivered to policy-holders on payment of their premiums.

The policy, by the non-payment of the premium at the time it was due, having lapsed and become forfeited, the main question on the trial was, whether the forfeiture had been waived and the policy revived.

In the course of the trial, the appellant proposed to prove that there existed an usage among all general agents of foreign insurance companies doing business in the city of Baltimore, and in this State generally, and among domestic insurance companies, to accept premiums after the time when they become due and payable by the terms of the policies, and to deliver to the policy-holders the receipts of the companies therefor, as of the date when the premiums were due; and also proposed to prove that it had been the usage of the appellee for more than ten years past to authorize, by parol license, its general agents in the State of Missouri, to receive, after they became due, premiums, and renewal premiums, on its policies issued to parties in that State, and to furnish such agents with receipts to be delivered to the policy-holders, dated as of the time when the premiums became due, and that such usage was general and universal with the appellee's agents in that State, with the knowledge and approval of the appellee.    This proffer on the part of the appellant was rejected by the Court below, and such rejection forms the subject of the first three bills of exception taken by the appellant.

That the Court below was right in rejecting the proposed evidence, we think is clear beyond all doubt.    The policy itself, as we have seen, contained expressed provisions upon

the subject, not only as to what was required to be done by the policy-holder, but the consequence of failure to observe the express stipulations therein in respect to the non-payment of the premium at the time when due. To have allowed the proposed evidence to be given in this case, would have violated a well established rule upon the subject, which is, that such evidence of usage can never be received, if it be repugnant to or inconsistent with the terms of the contract; for otherwise it would not go to interpret and explain, but to contradict what the parties have reduced to writing as the evidence of their agreement. And in order to establish an inconsistency between the written contract of the parties and the usage or custom offered to be proved, it is not necessary that the former should in express terms exclude the latter; but if it appear from the instrument, either expressly or by implication, that the parties did not mean to be governed by usage, no evidence respecting it can be received. Omissions may be supplied, in some cases, by the introduction of such proof, but it cannot prevail over or nullify the express provisions and stipulations of the contract. It can only be admitted either as an aid to interpretation where the meaning of the terms of the contract is equivocal or obscure, or to add some incident consistent with the terms of the contract, but about which the parties are silent. *Appleman vs. Fisher*, 34 *Md.*, 553; *Thompson vs. Riggs*, 5 *Wall.*, 663; *Howell vs. The Knickerbocker Life Ins. Co.*, 44 *N. Y.*, 276; 2 *Taylor's Ev., sec.* 1075.

But, besides the objection that the proposed evidence would contradict the express stipulations of the parties, it was objectionable on other grounds. It was not proposed to show that the usage had reference to policies containing stipulations like the one before us, or within what time, after the premiums became due by the terms of the policies, they were, by the usage, receivable; nor was it proposed to be shown that the appellant had knowledge of,

or was in the least influenced by, or that she relied on the existence of such usage. And as to the existence of the usage in the State of Missouri, authorized by the appellee to be observed by its agents, that manifestly can have nothing to do with this case. By the very terms of the policy sued on, the appellant expressly stipulated that it should be at the option of the appellee whether any premium should be received after the time designated for its payment; and that all receipts of premiums at any time past-due, except as provided in the policy, were to be viewed by the parties in interest as acts of courtesy of the company, and in no case to be considered as precedents, or waiver of the forfeiture of the policy, according to its express conditions. No matter, therefore, in what number of instances the appellee may have exercised its option to receive past-due premiums, such acts would neither constitute an usage, nor make precedents that would conclude it, and justify the appellant in the non-observance of the express requirement of the policy with respect to the payment of the premium. We think, therefore, that there was no error in the Court's ruling on the first three exceptions of the appellant.

The fourth exception taken by the appellant was to allowing the appellee to read in evidence to the jury the contract between the appellee and its agent Snell, whereby the powers and duties of the latter were defined. In allowing the reading of this paper, we think the Court committed no error. It was one of the modes of proving the extent of the agent's authority, and is always allowed, where there is a question whether a particular act is within the powers and authority delegated to the agent. 2 *Greenl. Ev.*, secs. 61 *and* 63. It is true, the appellant was in no manner concluded by such contract between principal and agent; but the question to be investigated was, whether the act of the agent was within the scope of his authority, and that being the nature of the question, it

was competent to the appellee, on its part, to show what authority over the subject had been conferred upon the agent; and the authority being in writing, the rules of evidence required the production of the writing before other evidence upon the subject could have been offered by the appellee. On the other hand, the appellant was bound by no such rule. She was at liberty to rely either upon the express delegation of authority, or upon the authority as it might be inferred from the habit and course of dealing between the parties, or upon the subsequent ratification and adoption of the act of the agent by the principal.

Having thus disposed of the exceptions relating to questions of evidence, we come now to the prayers for instruction to the jury, which were offered and ruled upon at the trial. ·All those on the part of the appellant were rejected, while on the part of the appellee there is a single prayer in the record, by the granting of which the Court instructed the jury that the policy sued on had become lapsed or forfeited by the non-payment of the premium as required by the terms of the contract, and that there was no legal evidence in the case from which they could find that the policy was ever revived, or the forfeiture thereof waived by the appellee, and therefore their verdict should be for the appellee, which was rendered accordingly.

It is obvious, if this instruction be correct, it renders altogether unnecessary an examination of the several prayers of the appellant; and therefore we shall first examine into the correctness of the instruction given by the Court at the request of the appellee.

That the policy had lapsed or become forfeited, by the non-payment of the premium, as required, is not a controverted question in the case. That is conceded. But whether, upon the facts of the case, taking all those in favor of the appellant as true, and making the most favorable deductions therefrom, the general agent of the appellee had authority, by receiving the over-due premium from

the appellant, after the lapse of the policy, to revive the policy so as to bind the appellee; or whether, by the receipt of the premium by the agent, and its transmission by him to the appellee, and its retention, under all the circumstances of the case, the appellee is to be taken as having adopted or ratified the act of the agent, and thus waived the forfeiture and revived the policy, are the questions to be determined under the instruction given by the Court.

1. The policy of insurance constituted the contract between the parties; and, as we have seen, that instrument expressly provided that in case the premium was not paid at the time when due by the terms of the policy, the appellee should not be liable, and the policy should cease and determine.　Upon default, therefore, in the payment of the premium, as required by the terms of the policy, that instrument became a nullity, and was no longer of any effect whatever; and it could only be revived and the risk resumed, at the option of the appellee.

Now, it is not pretended that the general agent in charge of the branch office in Baltimore, had any power to conclude contracts of insurance and to issue policies in the name of the appellee; nor is it pretended that he could bind the company to issue a policy without its approval, or to assume any risk that it did not approve.　His duties and course of dealing were to receive applications and forward them to the home office, there to be approved or rejected, and if approved, policies were issued and transmitted to the agent, to be delivered to the applicants upon compliance with the conditions precedent.　This was the course of proceeding by which the appellant obtained her policy, and it is not shown that there ever was any exception to this mode of transacting the business between the agent and his principal.　The agent was clothed with authority to receive premiums from the policy-holders, by exhibiting a receipt executed at and furnished from the home office; and all the premiums that were paid by the appellant, except one,

appear to have been paid upon receipts of this character. The record does not disclose the slightest evidence to justify the conclusion that the appellant was ever induced to believe, or that she was justified in believing, that the agent possessed authority to change or vary in any manner the terms and stipulations of the contract; and if he possessed no such power, he certainly possessed none to remit a forfeiture and revive the contract, after it had lapsed and become void, by the appellant's own default.

The principle seems to be well settled, that where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired. This question is decided in a well considered case in the Supreme Court of Connecticut, where it was held, in an action on a life policy which declared that it was not to be binding until countersigned by the agent, and delivered and the advance premium paid, and these were the only words expressive of the agent's authority, that he was not authorized to accept a subsequent premium after the time at which the policy expired by reason of the non-payment of such premium at the proper time. *Bouton vs. The Amer. Mut. Life Ins. Co.*, 25 *Conn.*, 542. The Court, in the course of its opinion in that case, said: "We think that he (the agent) was not empowered to receive any premium which was not paid according to the requirements of the policy that is, in advance. That instrument was his sole guide in regard to what he should do under it. The contract was to be made by the defendants, and not by him, excepting in the capacity of their agent; he was not authorized to alter or vary it, or depart in any respect from it, or dispense with the fulfilment of its conditions by the insured, or discharge it, or revive it after it had by its terms ceased to be obligatory on his principal, by a waiver of a compliance with its provisions or otherwise. These must be done by the parties to the contract. He was only authorized to

act in pursuance of it, and then so far only as it gave him authority. He could exercise only the power delegated to him, and no power is delegated to him to depart from the terms of the policy. It surely is not necessary to cite books to show that an agent, authorized only to execute a contract in behalf of one of its parties, has no power to vary it or dispense with its execution by the other, or that one authorized by a person to receive a payment of a sum of money from another on and pursuant to a conditional contract, which requires such payment to be made at a specified time, is thereby empowered to authorize or waive a breach of such condition." The question is also very fully considered in the case of *Catoir vs. Amer. Life Ins. & Trust Co.,* 33 *N. J. R.,* 487, and decided the same way.

The fact that the agent held the receipt of the appellee, transmitted to him from the home office, regularly executed, and only requiring to be countersigned by him to enable him to receive the money due on the policy, has been much relied on as evidence of authority in the agent to receive the overdue premium, and waive the forfeiture. But that fact must be taken in connection with the regular course of dealing between the home office and the agent, as shown by the appellant's evidence, and also in connection with what is expressly provided for on the face of the policy. It is not to be presumed that the receipt was transmitted to the agent to be used by him in any other manner than as required and authorized by the policy.

2. It being clear that the agent possessed no authority, either express or implied, to waive the forfeiture of the policy, the next question is, whether the appellee has adopted or ratified the act of the agent in receiving the premium after the policy became forfeited. This depends upon the circumstances under which the premium was received by the appellee.

According to the uncontroverted evidence in the case, the over-due premium, upon being received of the appel-

lant by the agent, was entered in a general account kept by the latter with the appellee, without any entry or memorandum disclosing the date when received, or any of the circumstances attending the transaction, and which account was transmitted to the appellee on the 1st, and received by it on the 3rd of July, 1872. The record does not disclose the slightest evidence that the appellee possessed any information whatever in regard to the appellant's default in payment of the premium, or that the policy had become forfeited before the premium had been received by the agent, until some time after the death of the party upon whose life the policy was issued. In order to fix the liability of the appellee, by means of ratification or adoption of the act of the agent, it was necessary that the appellant should have made it appear that the appellee possessed knowledge, at the time of the alleged ratification or adoption, of all the material facts. Without evidence of such knowledge, ratification or adoption cannot be imputed to the appellee. *Adams' Exp. Co. vs. Trego*, 35 *Md.*, 69; *Security Ins. Co. vs. Fay*, 22 *Mich.*, 467.

In this important particular, there is an entire failure of evidence. Nor is there any evidence in the record from which it could be concluded that the appellant had been deceived as to her rights under the contract, farther than she may have been misled by her own ignorance of what was plainly required of her by the terms of the contract. On the contrary, she had her attention specially called to the rules of the company, and was fully informed, by the letter from the appellee's agent of the 15th of June, 1872, of the consequences of allowing the policy to lapse by nonpayment of premium. By that notice she was informed that if the policy was allowed to be forfeited for non-payment of premium as required by its terms, the risk would only be resumed upon a new medical examination, the certificate of which to be first submitted to and approved at the home office. She was thus fully informed, not only

that the policy would lapse by non-payment at the time stipulated, but, in that event, that it could only be revived by the consent and approval of the home office of the appellee;—thus in express terms excluding the power of the agent to revive the policy. This explicit notification should have admonished the appellant of the necessity of being punctual in observing the terms of the policy. By her letter to the agent, of the 28th of June, enclosing the order for the past-due premium, she admits that she had allowed the time to pass, but excuses her delay by referring to her difficulties in getting money. However strongly this may have appealed to the indulgence of the appellee, it afforded no legal justification for the violation of an express condition of her contract.

It was strongly urged in the argument for the appellant, that notwithstanding the appellee may not have known at the time of the receipt of the account from the agent, embracing the premium paid by the appellant, nor until after the death of the party upon whose life the policy issued, that the policy had lapsed before the premium was paid, yet, inasmuch as the premium thus paid was not actually returned before suit brought, the law will imply an adoption of the unauthorized act of the agent, and that the appellee is thereby estopped to deny the agent's authority. But in this we do not agree.

There is no doubt of the general proposition, that if an unauthorized act be done by an agent in the name of his principal, when the latter is once fully informed of what has been done in his behalf, he is bound, if dissatisfied, to express his dissatisfaction within a reasonable time, and, as far as he can, to restore the other party to his former position. 2 *Greenl. Ev., sec.* 66. But, in this case, the appellee, within a reasonable time, indeed at once, after being informed of the circumstances attending the receipt of the premium by the agent, disclaimed the act; and although the money was not actually returned, the appel-

lee was notified of the appellant's claim for the amount of the policy, which excluded the idea that the money received for the premium would be accepted by the appellant in return. The appellee, however, did offer to furnish the appellant a paid up policy for amount of premiums received, including that paid the agent on the 28th of June, 1872; and as this would have been payable at once, it was equivalent to an offer to return the money.

In the case of the *Steam Nav. Co. vs. Dandridge*, 8 *Gill & John.*, 248, an action on a contract for towing vessels and cargo out of the harbor of Baltimore, by the defendant, and where the question of the agent's authority to make the contract was involved, the Court below instructed the jury, "that if the consideration for the towing out of the plaintiff's vessel, as agreed on between J. and M., was collected by one of the defendants' agents, on their way out of the ice, and paid over to the defendants, who have ever since retained the same, as also all the other money that was received from the other vessels towed out of the ice at the same time, that then, the said facts are in law an adoption of the contract, under which said money was paid by the plaintiff, and that said contract is as binding on defendants as if there was clear evidence of a precise authority from defendants to M. to enter into said contract on their account." That instruction was pronounced erroneous by this Court, because the jury were not required to find that the defendants knew on what account the money paid to them was received, or that they knew the terms of the contract on which the money was paid. If, said the Court, the jury failed to find either of those facts, and they were not instructed that the finding of either was necessary, they were not at liberty to find, nor was it an inference of the law, that the defendants adopted the contract under which the money was paid.

The ruling in that case is quite applicable to this, and would seem to be a full answer to much of the very able argument that was made for the appellant.

Busby *vs*. The North America Life Ins. Co.

The case of *Miller vs. The Life Ins. Co.*, 12 *Wall.*, 285, was relied on with apparent confidence by the appellant's counsel, as an authority bearing strongly upon some of the positions taken by him in his argument. But that case, when examined, will be found to be quite distinguishable from the present. The question there was, whether a waiver of a payment in *cash* of the premium had or had not been made; and as the Court below, sitting in the place of a jury, had found as matter of fact, that such payment had been waived by the company, the Supreme Court held, that the correctness or incorrectness of such finding was not open to review. But the defendant had offered a series of prayers, upon the assumption that there was no authority delegated to the agent to waive the cash payment, and the Court said, that upon such assumption, if well founded, it might well be conceded that the judgment ought to have been the reverse of what it was. And in concluding their opinion, the Court say: "Conditions, it is sometimes said, cannot be waived even by a general agent, but the decisive answer to that suggestion in this case is that the policy, when properly construed, does not contain any absolute condition that it shall not attach, or be operative unless the cash premium is first paid by the insured, and in the absence of any such positive condition in the policy, it is not necessary to enter upon a discussion of that topic." So, as we may perceive, the question involved in that case was quite different from that involved in the case before us.

Upon the whole case, we are clearly of opinion that the Court below committed no error in granting the instruction to the jury, that there was no evidence before them upon which they could find that the forfeited policy had ever been revived. The judgment therefore must be affirmed.

*Judgment affirmed.*

(Decided 25th June, 1874.)