## LINDEN HOMES, INC. *v.* LARKIN

[No. 347, September Term, 1962.]

*Decided June 7, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*A. Slater Clarke,* for appellant.

*John G. Noppinger,* for appellee.

HORNEY, J., delivered the opinion of the Court.

Linden Homes, Inc., and Cloverdale Construction, Inc., were organized at the same time and had the same stockholders, directors and officers. The boards of directors of each corporation had authority to borrow money and to make and issue notes and other evidences of indebtedness, but Linden Homes had never borrowed money without the express approval of its board and the entry of such approval in the minutes of the corporation, and it had not authorized its president to execute the promissory note sued on in this action. Cloverdale Construction erected houses on land owned by Linden Homes. Linden Homes sold the houses and received the proceeds of sale. And both corporations shared in the profits from the sales. M. Robert Gimbel, who was the president of both, signed the note in the name of both corporations. Richard A. Larkin, who had made a $5000 loan to Cloverdale Construction, was the holder of the note sued on.

The twofold question presented on appeal is whether the president of the corporations had authority to bind Linden Homes for a loan made to Cloverdale Construction by executing a promissory note to the lender in the name of both corporations, and, if not, what effect did the indirect receipt by Linden Homes of benefits from the proceeds of the loan have on its responsibility to repay all or part of the note.

The loan was made by way of a cashier's check payable to Richard A. Larkin. The check was endorsed by him "to the order of" Cloverdale, Inc. The only other endorsement of the check was "for deposit only" to the credit of "Cloverdale, Inc." The check was delivered to Gimbel and he, in turn, delivered the note (payable in monthly installments) to Larkin. The proceeds of the note were used by Cloverdale Construc-

tion to pay its corporate bills for labor and materials used in constructing the houses and other corporate obligations.

When the first monthly payment was not made, Larkin filed this action against both corporations and also a motion for summary judgment supported by affidavit. Linden Homes filed a plea to the declaration and an answer to the motion supported by an opposing affidavit. The trial court having summarily determined that there was a genuine dispute as to a material fact, entered an order denying the motion for summary judgment and the case came on for trial before a jury. At the close of the plaintiff's case, Linden Homes moved for a directed verdict in its favor and renewed the motion at the conclusion of the entire case. Both motions were denied. The plaintiff then moved a second time for a summary judgment. The motion was granted and judgment was entered against both corporations in favor of the plaintiff for the full amount of the note and accrued interest. Linden Homes appealed, but Cloverdale Construction did not. [Since the parties as well as the trial court seem to have treated the second motion for a summary judgment as if it were a motion for a directed verdict in favor of the plaintiff (which in effect it was), we shall do likewise.]

Asserting that where the evidence is undisputed that the president of separate corporations does not have actual authority to execute a promissory note in the name of the corporations or to permit the credit of one to be pledged for the payment of indebtedness due by the other corporation, Linden Homes contends that the trial court erred in granting the motion of the plaintiff for a directed verdict instead of submitting to the jury the question of whether the president of the corporations had apparent or implied authority to do what he did. On the other hand, Larkin contends that since the court in effect found as a matter of law that Linden Homes had ratified the loan by accepting benefits therefrom, there was no issue for the jury to decide.

As we read the record, the lower court seems to have based its ruling, not on ratification, but on the apparent authority of the president of Linden Homes to borrow money. Ordi-

narily the president of a corporation is without authority to borrow money for the corporation unless he has been expressly authorized to do so either by the directors or by the by-laws. And such authority may be implied only where the president has been accustomed to borrowing money for the corporation whenever needed without express authorization. In which event, it is generally held that a corporation is estopped to deny implied or apparent authority. *Buchwald Co. v. Hurst,* 111 Md. 572, 75 Atl. 111 (1909). Here, however, where the record does not disclose any prior transactions in which the president of Linden Homes undertook to pledge the credit of the corporation without the acquiescence of the directors, it is apparent that the action of the president was without authority, either actual or apparent.

An unauthorized act in the name of a corporation may, of course, be subsequently ratified by the acceptance of the benefits of the act, but "[a]cquiescence in, or the receipt and retention of the proceeds and benefits of, an unauthorized transaction do not amount to ratification if not accompanied by knowledge of the material facts concerning the transaction." *Webb v. Duvall,* 177 Md. 592, 11 A. 2d 446 (1940). See also *Larkin v. Maclellan,* 140 Md. 570, 118 Atl. 181 (1922), and *Baltimore, C. & A. Ry. Co. v. Ennalls,* 108 Md. 75, 69 Atl. 638 (1908). Here, it is clear that the directors did not acquiesce in the execution of the promissory note, but it is not shown whether or not they had knowledge of the material facts concerning the execution of the note.

However, since it is apparently not disputed that Linden Homes knowingly received some benefit from the transaction, it should not be allowed to disclaim all responsibility for repaying that portion of the loan which redounded to its benefit. But because the record is silent as to how much was actually received, we must reverse the judgment and remand the case for such further proceedings as may be necessary to determine the amount of the benefits received.

> *Judgment reversed and case remanded for further proceedings; the costs of this appeal to be paid by the appellee.*