518 A.2d 151

**PROGRESSIVE CASUALTY INSURANCE COMPANY**

v.

**Robert E. EHRHARDT, et al.**

**No. 348, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 8, 1986.

**432**

434

Daniel W. Whitney (Kristine K. Howanski and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellant.

Michael J. Budow (Karen I. Kerr and Budow and Noble, P.C., on the brief), Bethesda, for appellees.

Argued before MOYLAN, WILNER and BISHOP, JJ.

BISHOP, Judge.

This case stems from a motorcycle accident involving appellee, Robert E. Ehrhardt, and his passenger, Judith Penn. Ms. Penn filed a tort action against Ehrhardt for personal injuries sustained from the accident. In response to this action against its insured, appellant, Progressive Casualty Insurance Company (Progressive), filed the instant action for declaratory judgment. In the declaratory judgment action, appellant requested that the court declare that Progressive had no duty to defend or indemnify Ehrhardt due to lack of insurance coverage.

Ms. Penn's insurance carrier, State Farm Mutual Automobile Insurance Company (State Farm), entered the litigation and aligned itself with Ehrhardt, contending that Progressive should pay for the injuries to its insured, Ms. Penn. In the event the court determined that Ehrhardt was uninsured at the time of the accident, Ms. Penn filed a crossclaim for damages against State Farm.

Progressive and State Farm filed motions for summary judgment on the issue of Progressive's duty to defend and indemnify Ehrhardt. The court, however, denied summary judgment because there existed a dispute as to a material fact relating to whether Ms. Penn's mother had notified Progressive's Baltimore Claims Office of the accident on May 26, 1983. The case went to trial before Judge Robert

F. Fischer in the Circuit Court for Howard County. In a memorandum, Judge Fischer concluded that Ehrhardt was covered by Progressive at the time of the accident. Accordingly, the court ordered that Progressive must defend Ehrhardt against claims brought on behalf of Ms. Penn arising out of the accident and indemnify him according to the terms of his insurance policy.

Progressive appeals this outcome by raising three issues:

I. The evidence was insufficient to support the trial court's finding that Progressive had knowledge of the accident at the time it backdated the policy to May 19, 1983;

II. The trial court's conclusion that its agent had authority to backdate the policy was erroneous; and

III. Progressive's actions did not amount to a waiver of its right not to extend coverage for the period during which the loss occurred.

## FACTS

Robert Ehrhardt was the named insured in a motorcycle liability insurance policy which he purchased from Progressive. The policy covered the period from May 19, 1982 to May 19, 1983 and was renewable at Ehrhardt's option. According to the terms of the policy, the tendering of an insurance premium for $70.40 on or before May 19, 1983 would renew the policy for another year. If Ehrhardt failed to tender payment by that expiration date, however, policy coverage would cease at 12:01 a.m. on May 19, 1983. If Ehrhardt tendered payment after the expiration date, the policy was still renewable but the effective date of the renewal would have been the postmark date of the premium.

Ehrhardt failed to pay his premium by the expiration date and, consequently, his policy lapsed automatically on May 19, 1983. Six days later, Ehrhardt was involved in a motorcycle accident in which he and Judith Penn suffered injuries. At the hospital that evening, Ehrhardt asked his father to pay his overdue premium. On the next morning,

Albert Ehrhardt carried out his son's request and paid to Progressive's soliciting agent, V.W. Brown, $70.40 for the renewal of the policy.

On two occasions, Progressive was put on notice of the accident. First, Ehrhardt notified Progressive on May 31, 1983. In his report, however, he fraudulently claimed May 26, 1983 as the date of the accident, instead of May 25, 1983. Second, testimony indicates that Judith Penn's mother contacted Progressive by telephone on May 26, 1983. According to her testimony, which was corroborated by her husband, Mrs. Penn informed Progressive's Baltimore Claims Office that its insured had been in a motorcycle accident on May 25, 1983 in which her daughter suffered injuries. Although she was unable to supply Progressive with Ehrhardt's policy number, she did report that her daughter sustained serious injuries and was in the shock-trauma treatment unit at Maryland University Hospital. During trial, Progressive vigorously disputed this fact by introducing evidence indicating that its employees had no record or recollection of Mrs. Penn's telephone call.

Upon receiving Ehrhardt's renewal premium from his father on May 26, 1983, V.W. Brown Agency immediately forwarded it by mail to Progressive's Richmond office. Progressive initially processed it with an effective date of May 26, 1983, the date on which the envelope in which it was enclosed was postmarked. On June 2, 1983, Progressive's lead underwriter reviewed Ehrhardt's policy and backdated its renewal from May 26 to May 19, 1983. As a result, Robert Ehrhardt received in the mail from Progressive a renewal policy effective from May 19, 1983.

In a nonjury trial, the court found that Mrs. Penn's telephone call placed Progressive on notice of the May 25th accident prior to the issuance of the policy renewal. Although Progressive would not ordinarily have been obligated to cover Ehrhardt's accident, the court concluded that it waived its right to void the policy when, with notice of the accident, it issued Ehrhardt's renewal effective on May 19,

1983 and charged a premium based on that renewal date. Accordingly, the court declared that Progressive was obligated to defend and indemnify Ehrhardt in the underlying personal injury claim.

The sole issue before this Court is whether Progressive waived its right not to cover Ehrhardt's losses sustained during the defaulting period. Before plaintiffs may invoke waiver as the ground for recovery, three prerequisites must be established: knowledge, authority and intent. Progressive must have had knowledge of all material facts; its agent must have acted with its authority; and the actions of its agent must have amounted to an intentional relinquishment of a known right. Progressive contends that appellees have failed to satisfy the requirements of these prerequisites. We will address these issues in order.

## I.

### *Knowledge of Insured's Loss*

Appellant challenges the trial court's finding that Mrs. Penn had placed Progressive on notice that Ehrhardt had been involved in an accident on May 25, 1983. In support of this position, appellant points to the fact that none of its employees that normally receive claims had any recollection of Mrs. Penn's call. This was corroborated by Progressive's claims registry, which revealed that no claim was received from Mrs. Penn on that day. Moreover, appellant suggests Mrs. Penn's testimony is inherently incredible since it is entirely inconsistent with the procedures by which Progressive trains its employees to handle claims. As a matter of routine, its claims office assistants ask the caller a battery of questions that are enumerated on the loss report form. Mrs. Penn's testimony indicates that she was not subject to such a cross-examination. In light of this evidence adduced at trial, appellant contends the court's determination that it had notice was clearly erroneous. Md. Rule 1086.

Pursuant to Maryland Rule 1086, this Court must adopt a deferential posture when reviewing the trial court's factual findings. "Due regard" must be given to the courts opportunity to judge the credibility of the witnesses; we may not set aside an evidentiary conclusion unless the trial court was clearly erroneous. Md. Rule 1086; *Gosman v. Gosman*, 19 Md.App. 66, 78, 309 A.2d 34 (1973); *Carling Brewing Company v. Henry Belzner*, 15 Md.App. 406, 411–13, 291 A.2d 175 (1972).

■ In the instant case, appellees presented substantial evidence from which the trial court could have concluded that Mrs. Penn notified Progressive of the May 25th accident on May 26, 1983. Because of this substantial evidence, we affirm the trial court's conclusion that Progressive had knowledge of Ehrhardt's accident and the date of that accident when it backdated his insurance policy.

## II.

### *Agent's Authority to Bind the Principal*

■ Authorized agents may subject the principal, in this case Progressive, to personal liability and create rights in its favor. This ability to bind the principal, however, is limited to the extent which the agent is authorized to act. *Colonial Building & Loan Company v. Boden*, 169 Md. 493, 182 A. 665 (1936); *Hardy v. Chesapeake Bank*, 51 Md. 563 (1879); *see generally* 3 Am.Jur.2d *Agency* § 271 (1986) (discussing principal's liability for agent's unauthorized acts); W. SEAVEY HANDBOOK OF LAW OF AGENCY § 3 (1964) (discussing the relationship between the principal and agent).

In the case *sub judice*, appellees contend that one of Progressive's agents, its chief underwriter, waived its right not to cover Ehrhardt's losses sustained during the defaulting period when the underwriter backdated the policy to May 19, 1983. Applying the tenets of agency law discussed above, appellees' contention hinges on whether Progressive authorized its agent to backdate the policy.

■ An agent's authority to act must come from the principal. It is well established that the authority conferred upon the agent by the principal can take two forms: actual authority or apparent authority. According to American Jurisprudence:

[a]ctual authority is that which is actually granted, and it may be express or implied. Apparent, or, as it is also called, ostensible authority, on the other hand, is that authority which, though not actually granted, the principal knowingly permits the agent to exercise or which himself holds out as possessing.

3 Am.Jur.2d *Agency* § 71, at 575 (1986) (footnotes omitted).

■ In addressing the issue of authority, the trial court concluded that Progressive's lead underwriter had no actual authority to backdate Ehrhardt's policy. The facts of the case support the court's conclusion. Progressive authorized its underwriters to backdate policies only upon approval of the office supervisor after the insured has provided a written declaration of no loss. Moreover, Progressive limited this practice of backdating to situations where the renewal payment was received within five days of the policy expiration. In the case at bar, there was no approval by the office supervisor, no written declaration of no loss, and Progressive received the renewal payment seven days after the expiration of Ehrhardt's policy.

While finding no actual authority, the court nevertheless concluded that Progressive's agent had apparent authority to backdate the policy. In support of its conclusion, the court gave no explanation. After careful review of the record, we find the court's conclusion somewhat problematical.

■ The Court of Appeals in *Reserve Insurance Company v. Duckett,* 240 Md. 591, 214 A.2d 754 (1965) succinctly summarized the doctrine of apparent authority as follows:

One who knowingly permits another to act for him as though authorized, inducing third persons to rely to their disadvantage on the seeming authority, is estopped from

later asserting the lack of authority of his apparent agent.

> *Duckett,* 240 Md. at 600–01, 214 A.2d 754 (citing *Hobdey v. Wilkinson,* 201 Md. 517–26, 94 A.2d 625 (1953)). *Accord Ramsburg v. Sykes,* 221 Md. 438, 442–43, 158 A.2d 106 (1960); *White v. Friel,* 210 Md. 274, 284, 123 A.2d 303 (1956); *Penowa Coal Sales Company v. Gibbs and Company,* 199 Md. 114, 119, 85 A.2d 464 (1952). *See generally* 3 Am.Jur.2d *Agency* § 80, at 587 (1986) (setting forth prerequisites for establishing apparent authority). Under this doctrine, the crucial factor is reasonable reliance by a third party on the principal's conduct. Specifically, the principal becomes responsible for the agent's actions when the principal's conduct, either affirmative acts or the failure to take corrective steps, has clothed an agent with apparent authority and thereby induces a third party to rely to his detriment.

Analysis of Progressive's relationship to the relevant third parties, presumably Ehrhardt and Judith Penn, does not reveal a clear-cut case of reasonable reliance. Since the decision by Progressive's underwriter to backdate Ehrhardt's policy occurred after the accident, neither party can claim reliance on that act when they rode the motorcycle. Progressive, however, obstensibly approved its underwriter's decision to extend coverage for the prior loss. This approval continued for over six months, until December, 1983, when Progressive cancelled Ehrhardt's policy and returned all premium payments to Ehrhardt. Although it is certainly possible that during this sixth month period either party could have relied to their detriment on Progressive's decision, appellees failed to allege such reliance in their brief, while the factual record appears inconclusive on this point.

 This case, however, need not turn on the issue of whether Progressive's underwriter acted with apparent authority. Even if the underwriter acted completely without authority, Progressive can nevertheless become liable if it

ratifies the agent's conduct. *Smith v. Merritt Savings and Loan, Inc.,* 266 Md. 526, 536–40, 295 A.2d 474 (1972); *Webb v. Duvall,* 177 Md. 592, 596–98, 11 A.2d 446 (1940). *See* 3 Am.Jur.2d *Agency* § 71 at 575 (1986); Restatement (Second) of Agency, § 82 (1958). Ratification requires an intention to ratify, *Linden Homes Inc. v. Larkin,* 231 Md. 566, 570, 191 A.2d 441 (1963), and knowledge of all material facts. *Smith,* 266 Md. at 539, 295 A.2d 474; 3 Am.Jur.2d *Agency* § 189 (1986).

 Intention to ratify may be inferred by words, conduct or silence on the part of the principal that reasonably indicates its desire to affirm the unauthorized act. *Linden Homes,* 231 Md. at 570, 191 A.2d 441; *Bruffey Contracting Company v. Burroughs Corporation,* 522 F.Supp. 769, 774 (D.Md.1981), *aff'd,* 681 F.2d 812 (4th Cir. 1982). *See generally* Restatement (Second) of Agency § 93 (1958); 3 Am.Jur.2d, *Agency* § 182, at 683–84 (1986). Circumstances that suggest an intent to ratify include: receipt and retention of the benefits of the unauthorized transaction, *Smith,* 266 Md. at 537, 295 A.2d 474; *Linden Homes,* 231 Md. at 570, 191 A.2d 441, Restatement (Second) of Agency § 98 (1958) and a failure to make a timely disaffirmance of the unauthorized acts. *Id.* § 94.

 Applying these factors to the case at hand, the telltale signs of ratification are apparent. There is no doubt that Progressive received a benefit when it backdated Ehrhardt's policy from May 26 to May 19, 1983. As Judge Fischer correctly noted,

> [t]he practice of backdating policies results in financial gain to the insurer by creating a shorter period of coverage. While the amounts in any individual case are minor, if practiced on a larger scale, the financial gain can be significant. The practice, however, does have it perils as evidenced by the factual situation in this case.

Moreover, it is undisputed that Progressive retained this benefit and did not attempt to disaffirm the allegedly unauthorized act of its lead underwriter for over six months.

As to the second requirement, we hold that Progressive acted with full knowledge of all material facts. The trial court explicitly found, and we affirmed in the previous section, that Progressive was on notice that a loss to its insured occurred during the defaulting period. Because of that knowledge, Progressive is in no position to deny the legal implications of its retention of the benefits of the transaction. Accordingly, we hold that Progressive's actions retroactively conferred authority on its agent, subjecting it to whatever liability that backdating the policy entails.

## III.

### *Waiver of Insurer's Right to Cover Loss*

Waiver is defined as the voluntary and intentional relinquishment of a known right. *Rubinstein v. Jefferson National Life Insurance Company*, 268 Md. 388, 392–93, 302 A.2d 49 (1973); *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 531, 200 A.2d 166 (1964); J.A. APPLEMAN & J. APPLEMAN, 16B INSURANCE LAW AND PRACTICE § 9081, at 489 (1981) [hereinafter cited as INSURANCE LAW]. In order for waiver to exist, the "acts relied upon must be inconsistent with an intention to insist upon enforcing" the party's contractual right. *Rubinstein*, 268 Md. at 392–93, 302 A.2d 49; *Food Fair*, 234 Md. at 531, 200 A.2d 166. The last issue for this Court to decide is whether the actions taken by Progressive's employees amounted to an intentional relinquishment of its right not to cover Ehrhardt's accident.[1]

---

1. Progressive argues that Ehrhardt's lack of good faith bars him, and those subrogated to his rights, from asserting the doctrine of waiver. While this Court is disturbed by Ehrhardt's material misrepresentations to Progressive's claims department, his acts are legally irrelevant. It is well settled that in both Maryland and other jurisdictions that waiver of a forfeiture is unilateral in nature so that the insurer's act or conduct is dispositive and that the insured's act has no probative value or legal effect on the court's determination of the waiver issue. INSURANCE LAW, *supra*, § 9084, at 521. *Accord Gould v.*

■ The facts of this case indicate that Progressive acted inconsistent with its contractual rights detailed in Ehrhardt's policy. Ehrhardt's policy lapsed when he failed to pay the premium by May 19, 1983. Pursuant to the terms of the policy, Ehrhardt had the right to reinstate the old policy within six months of the expiration date, but the effective date of the reinstatement would have been the date that Ehrhardt tendered the payment, May 26, 1983, one day after the accident. At this point in time, Progressive clearly had the right to avoid coverage of the loss, which occurred during the defaulting period. *See Rubinstein,* 268 Md. at 392, 302 A.2d 49 (stating that "if an insurance policy contains a provision for its forfeiture for nonpayment of premiums, the insurance company may avoid the policy on the insured's failure to pay a premium"). Progressive's underwriter, however, acted inconsistent with this contractual right and backdated the policy to the expiration date, May 19, 1983.

Progressive nevertheless contends this act, although inconsistent with its contractual right, lacked the intentionality required under the doctrine of waiver. As we pointed out in the previous two sections, Progressive may not negate its intent by alleging lack of knowledge or authority on the part of its agent. Appellant's sole ground for negating intent thus becomes mistake: that Progressive's underwriter did not deliberately intend to waive its contractual right. The facts of the case, however, do not support this position.

■ The intention to waive a known right may result from an express agreement or may be inferred from the

---

*Transamerican Associates,* 224 Md. 285, 295, 167 A.2d 905 (1961) (quoting *Benson v. Borden,* 174 Md. 202, 219–20, 198 A. 419 (1938)); *Buchanan v. Switzerland General Insurance Company,* 76 Wash.2d 100, 455 P.2d 344 (1969); *Liberty Mutual Insurance Company v. Cleveland,* 127 Vt. 99, 241 A.2d 60 (1968); *Stonewall Life Insurance Company v. Cooke,* 165 Miss. 619, 144 So. 217 (1932). Since the main focus of the waiver issue concerns the actions of Progressive and not Ehrhardt, we find Ehrhardt's conduct not pertinent to our inquiry.

facts and circumstances surrounding the case. *Rubinstein,* 268 Md. at 392–93, 302 A.2d 49; *Food Fair,* 234 Md. at 531, 200 A.2d 166; *Gould v. Transamerican Associates,* 224 Md. 285, 294, 167 A.2d 905 (1961). In addressing this issue, Appleman's treatise on insurance law explains:

> Such waiver may be established by express agreement, conduct, course of dealing, or *ratification*.... The substance of the doctrine of waiver is that if the insurer, with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating a policy as in force, it will not thereafter be allowed to plead such facts to avoid its primary liability. *A forfeiture is waived where the insurer with knowledge thereof recognizes the continued validity of the policy.*

INSURANCE LAW, *supra,* § 9084, at 522 (footnotes omitted) (emphasis added).

 We hold that upon the facts in this case, Progressive waived its forfeiture right and recognized the validity of the policy. Progressive's employees negotiated and deposited the check for payment of the insurance policy. Its chief underwriter reviewed and then backdated the policy. A statement was sent out by Progressive to Ehrhardt to indicate its intent to cover him for the defaulting period. Finally, Progressive recognized the validity of the insurance policy for over six months, collecting additional premium payments.

In reaching our decision, we distinguish *North American Accident Insurance Company v. Plummer,* 167 Md. 670, 176 A. 466 (1935), cited on behalf of appellant. In that case, the Court of Appeals recognized the legal principle "that where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired." *Plummer,* 167 Md. at 683, 176 A. 466 (quoting *Busby v. North American Life Insurance Company,* 40 Md. 572, 584 (1874)). Applying this principle, the Court held that an agent, whose function is limited to soliciting insurance and collecting

premiums, lacks the authority to accept a new insurance policy for the insured on behalf of its principal. 167 Md. at 682, 176 A. 466.

The circumstances surrounding the Ehrhardt's policy renewal differ from those in *Plummer*. First, the agent in *Plummer* was not a general employee of the principal, but served the limited function of soliciting insurance and collecting premiums. *Id.* at 673, 176 A. 466. In contrast, those agents who processed and reissued Ehrhardt's policy—including the underwriter who backdated the policy—were general employees of Progressive. Second, the Court in *Plummer* ruled that the insurer's agent had exceeded its authority when it accepted the insured's renewal payment and that there was "no evidence of knowledge or ratification." *Id.* at 681, 176 A. 466. Those circumstances are markedly distinguishable from the facts in the case *sub judice*. The trial court determined explicitly that Progressive's agents acted with sufficient knowledge and authority to bind the principal and, we have already noted that Progressive's actions subsequent to the accident constitute ratification. And third, the terms of the policies differed in at least one significant detail. The policy in *Plummer* required a complete termination of the policy if the insured failed to tender the renewal payment before the policy expired. Once the policy terminated, reinstatement required the formation of a new insurance contract. *Id.* at 682, 176 A. 466. In Ehrhardt's policy, the insured had six months to reinstate the policy before his contractual rights expired completely. Accordingly, a contract was still in existence.

Although Maryland courts have not had the opportunity to address the precise issue, courts of other jurisdictions have held that an insurer's acceptance and retention of a past due premium, with knowledge that a loss was sustained during the defaulting period, renders the insurer liable for the loss. *E.g., State Farm Mutual Automobile Insurance Company v. Bockhorst*, 453 F.2d 533 (10th Cir.1972) (holding that insurer waived its right to refuse

coverage during defaulting period when it accepted premium over month later); *Central National Insurance Group of Omaha v. Grimmett,* 340 So.2d 767 (Ala.1976) (holding that insurer provided coverage even though insured paid premium two days after the policy expiration and one day after the accident); *State Farm Mutual Automobile Insurance Company v. Anderson,* 294 Ala. 451, 318 So.2d 687 (1975) (holding that insured covered even though tendered renewal premium twenty-three days after policy expiration and one day after the accident); *Alabama Farm Bureau Mutual Casualty Insurance Company v. Hicks,* 133 So.2d 221, 272 Ala. 574 (1961) (holding insured covered even though insured paid premium fifteen days after expiration and three days after loss).

Accordingly we hold Progressive's reinstatement of Ehrhardt's policy and its acceptance of the premium while in full possession of information (i.e. notice of the accident and its correct date) establishing its right to refuse reinstatement constituted a binding waiver that extended coverage for the period during which Ehrhardt's accident occurred.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.