UNION TRUST COMPANY *v.* POOR & ALEXANDER, INCORPORATED, ET AL.
[No. 29, January Term, 1935.]

*Decided March 16th, 1935.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Edward Duffy*, for the appellant.

*Hilary W. Gans* and *Edwin F. A. Morgan,* with whom were *Brown & Brune, Joseph T. Brennan, Semmes, Bowen & Semmes,* and *Lawrence Perin,* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The Union Trust Company of Maryland brought this action in the Common Pleas Court of Baltimore City on two demand notes executed by the Panda Company to the Farmers' & Merchants' National Bank of Baltimore. One note, dated October 14th, 1929, was for $20,933.13, which has been reduced by credits to $4,832.15, the other, dated May 7th, 1930, was for $3,490, since reduced by credits to $3,069.63, and both were secured by collateral.

The Panda Company was a voluntary association formed by Poor and Alexander, Incorporated, Frank M. Sweeney, Andrew J. Hundertmark, J. L. Campbell & Company, Incorporated, Louis O'Donnell, Ambrose J. Kennedy, John E. Weyer, Presley D. Bowen, and Walter W. Alexander, as an "investment trust," to deal in securities and to risk the credit of the members within fixed limits in that adventure. After the formation of the association, but before this action, Alexander died, and Corinne M. Alexander was appointed administratrix of his estate, and the Union Trust Company succeeded the Farmers' & Merchants' Bank as the owner of the notes. Demand having been made and refused for the payment of the notes, the appellant brought this action by filing against the appellees its declaration, notice to plead, and the agreement of association. The defendants, except Mrs. Alexander, who was not summoned, appeared and demurred to the declaration. Judgment on those demurrers was entered for the defendants, and from that judgment this appeal was taken.

In addition to the facts recited, appellant alleged in the declaration that A. J. Hundertmark, who executed them for the Panda Company, at the time the loans were made and the notes executed, furnished the bank a copy

of the agreement. The question in the case is whether upon those facts appellant is entitled to recover in this action against the appellees.

The text of the agreement referred to in the *nar.* is as follows:

"Be it hereby known that the men whose names appear herein, hereinafter referred to as members, have on this day agreed to the formation of an investment trust, the details and regulations of which are set forth herein and the signature of each member affixed hereto is to be considered his agreement to abide by these details and regulations:

"1. The trust shall be known as the Panda Company.

"2. A business meeting will be held each day, Sunday excluded, at 12.45 P. M. at the office of Poor & Alexander, Inc.

"3. Each member has an equal vote, but it is agreed that seven members shall constitute a quorum and will have the right to transact such business as may ordinarily be brought up at such meetings. In any event, a majority will rule.

"4.Such securities as are purchased from time to time will be hypothecated with some bank and loans made against said securities, it being expressly understood that no member will be obligated for any amount greater than the percentage of his investment bears to the total obligation to the bank.

"5. It is further agreed that upon the desire of any member to withdraw his investment he shall forego any of the accrued profits and in addition will be penalized 20% of his prevailing investment. Said withdrawing member, in conjunction with being penalized 20%, will also be charged with his pro rata share of any loss in

the event securities purchased are selling for less than the amount paid for same. Further, any member desiring withdrawal of his funds must give thirty days advance notice.

"6. It is agreed further that not more than 25% of the assets of the trust will be invested in the stock of any one company or corporation unless otherwise agreed to do so by all members.

"7. Assignment of the interest of any one member is permissible upon the unanimous consent of all members.

"8. This is a closed trust and no new member will be accepted unless by assignment as provided for in article No. 7.

"9. A. J. Hundertmark has been elected to serve in the capacity of Secretary and Treasurer and hereby given the power of attorney by those members whose signatures are affixed hereto to negotiate with the bank in the matter of loans, to sign such notes and documents as are required by the bank, to execute substitutions. No further authority from the members is necessary for A. J. Hundertmark to execute these deals; furthermore, A. J. Hundertmark is hereby given authority to buy and sell securities provided such authority is received from the members and to sign checks of the trust along with either Frank M. Sweeney or Pressley D. Bowen, the three members mentioned representing the Executive Committee.

"10. The list of the members, along with the respective amounts subscribed, is as follows:

1. Poor and Alexander, Inc ........................$5,000.00
2. Frank M. Sweeney ................................. 500.00
3. A. J. Hundertmark ................................. 500.00
4. J. L. Campbell & Company................ 500.00
5. Louis O'Donnell ....................................... 500.00
6. Ambrose J. Kennedy ........................... 500.00
7. John E. Weyer................................: 500.00

8. Pressley D. Bowen ................................ 500.00
9. W. W. Alexander ................................ 500.00

The contention of the appellant appears to be (1) that the parties to that agreement were general partners, and (2) that as general partners each was severally liable to creditors of the partnership, even though they had, to the knowledge of the creditor, by agreement limited the liability of each partner for the firm debts, because (3) such limitation applied exclusively to the relations of the partners *inter sese* and could not limit the several liability of each partner for a partnership debt, and that therefore (4) the defendants as members of the partnership were jointly and severally liable in this action to the plaintiff on the notes sued on.

The contention of the appellees is: (1) That the rights of the parties to this action are fixed by the agreement; (2) that the two notes were executed by an agent; (3) that the authority of the agent to execute them was limited by the agreement; (4) that the payee at the time it made the loans knew of that limitation, and is bound by it; and that (5) the plaintiff is not entitled to a general judgment against the defendants as members of a general partnership.

From this statement it is apparent that the contentions of the parties are parallel rather than conflicting; that the plaintiff relies upon certain established rules and principles incident to the partnership relation to support its contention that the defendants are jointly and severally liable on the notes, while the defendants rest their defense upon the agreement and the law of agency.

Assuming that the parties to the agreement had the capacity to execute it, and we know of no reason to the contrary, and that the bank knew of it, and that is conceded, and that the notes were executed for the Panda Company by an agent acting under a defined and limited authority, the extent of which was known to the bank when it accepted them, the relations between the bank and the defendants must be measured by the terms of

the contract rather than by the general law of partnership. Nor is the question affected by the bank's power to lend money on such instruments as the two notes sued on in this case, for if the agent had no authority to bind the members of the partnership severally for the whole debt, and the lender knew he had no such authority, its want of power to make such a loan as was authorized by the agreement could not possibly have expanded the agent's authority beyond the limits of the agreement creating it, or vest in him a power expressly denied to him.

Whether, therefore, the association of the persons signing the agreement constituted a general partnership, a limited partnership, a joint adventure, a Massachusett's trust, or a syndicate, becomes wholly immaterial, and the case turns upon the construction of the contract, to ascertain the limits of the agent's authority.

The purpose of the association was apparently to risk, not cash, but the credit of the members to the extent of $9,000, to secure capital to speculate in securities. Its members contemplated that, when securities were purchasd, they would be "hypothecated with some bank and loans made against" them. Or, in other words, that "some bank" would furnish the money to buy the securities, and that the loans which it made for that purpose would be protected in part by the securities so purchased, which would be pledged as collateral, and in part by the credit of the members of the association. To facilitate the operations of the association, one of its members, A. J. Hundertmark, was elected "to serve in the capacity of 'secretary and treasurer' " and authorized "to negotiate with the bank in the matter of loans, to sign such notes and documents as are required by the bank to execute substitutions." Under those circumstances it was natural that the members should desire to limit the risk of which each might be subjected through the operation of the highly speculative and hazardous nature of the adventure. Accordingly, the agreement provided that: "No member will be obligated for any amount greater than the percentage of his investment bears to the total obligation

to the bank." It will be noted that the percentage of risk is calculated not upon the aggregate investments of the members, but upon loans actually made, so that while the ratio of a $500 share to the whole investment would be a little more than five and a half per cent. the ratio of such a share to a bank loan would of course vary with the amount of the loan, being in this case a little more than two per cent. So that, while the ratio of each share to the whole investment would remain constant, the ratio of such share to bank loans would diminish as the amount of the loan increased, and increase as it diminished. Appellant assumes that what the members of the association "probably intended to say" was that no member should be obligated to pay a "greater percentage of any loss than the percentage of his investment," but since the language is clear enough it must rather be assumed that they intended to say what in fact they did say.

Taking the fourth and ninth paragraphs of the agreement together, they authorized Hundertmark as the agent of the association to pledge the credit of its members by executing on their behalf "notes and documents such as are required by a bank," but at the same time limited his right to pledge their credit or to obligate them for any amount greater than the percentage "which the investment" of each bore to the total loans or obligations which Hundertmark was authorized to contract on their behalf.

That conclusion seems inevitable from the nature of the undertaking in which the members of the association were engaged, and the extent of their respective interests therein, for it cannot reasonably be assumed that a member who expressly limited his investment to $500 would nevertheless be willing to assume the same risk as one whose investment was ten times that amount, when the thing they were risking was not cash, but credit. The language used, considered in connection with the object and purpose of the contract, leaves no reasonable doubt that it was the intention of the parties to the contract to limit Hundertmark's authority to pledge their credit to the ratio which the amount set opposite their respective

names bore to any loans which he might negotiate under that authority. And since it is "wholly a matter of construction whether each of several obligors makes a separate promise or whether they unitedly make a joint promise," (*Williston on Contracts*, sec. 383) it follows that the liability of each of the persons executing the agreement of the association on the two notes executed by Hundertmark as for the Panda Company was several and not joint.

No case precisely in point has been cited, but a line of cases somewhat analogous are those involving subscription contracts, where it has been held that, even in the absence of words expressly manifesting an intention to create several promises, where the nature of the contract sufficiently indicates such an intention, the promises will be held to be several. *Ibid.; Gibbons v. Bente,* 51 Minn. 499, 53 N. W. 756; *Cornish & Co. v. West,* 89 Minn. 360, 94 N. W. 1082. And *Parrish v. State,* 14 Md. 238, 246; *Boyd v. Kienzle,* 46 Md. 294, 299, 300, announce the principle that, in cases where several obligors who execute an agreement clearly express therein an intention that the liability of each obligor shall be several, the intention thus expressed will be given effect; and cases collected in *L. R. A.* 1915B, 221, illustrate the application of that principle in a variety of cases.

In view of that conclusion, any general discussion of the law of agency is irrelevant, for if the authority of Hundertmark was expressly limited by the agreement, and the bank knew of that limitation when it made the loan, no citation of authority is needed to support the proposition that it is bound by it. Code, art. 73A, sec. 9, subd. 4; 7 *Un. Laws Ann. 17.* For apart from that paper the declaration refers to no facts sufficient to constitute Hundertmark the agent of the persons who formed the Panda Company.

Assuming, therefore, that the defendants are severally and not jointly liable for the debts evidenced by the two notes, and that their several liability is limited to the ratio which their several subscriptions or investments bears to the total loans, the question occurs whether even that lia-

bility can be established in a suit against the persons named in the agreement as members of the Panda Company as joint defendants.

Undoubtedly the rule at common law is that separate judgments cannot be entered against defendants sued jointly *(Black on Judgments,* sec. 210; *Freeman on Judgments,* sec. 101; 47 C. J. 69), except where one or more of the defendants asserts a purely personal defence, nor can a joint judgment be entered unless each defendant is liable to the full extent of the verdict *(Ibid.),* nor can a joint action be maintained against defendants who are not jointly but severally liable, as in subscription contracts, or indeed in other contracts where the obligors are severally and not jointly liable. *Cornish & Co. v. West,* 89 Minn. 360, 94 N. W. 1082; *Gibbons v. Bente,* 51 Minn. 499, 53 N. W. 756; *Rutherford v. Holbert,* 42 Okl. 735, 142 P. 1099. For, as stated in *Boyd v. Kienzle,* 46 Md. 294, "In *Chitty on Contracts,* vol. 1, 1354, the author says: 'If two or more persons, who have joined together in a contract "covenant severally" or become severally bound, it is (in the absence of express words implying a joint liability) the same as if each of the covenantors had executed a separate deed on the same paper. A joint action cannot, consequently, be maintained against the parties to such a contract, but each must be sued separately upon the separate contract made by each.'" It is said in *Freeman on Judgments,* page 178, that a different rule prevails in suits by a judgment creditor against several stockholders for their unpaid subscriptions, but not only are cases of that character said in *L. R. A.* 1915 B 221 to constitute a distinct class, but, although not so stated, the author, in saying that, apparently had in mind not the common law, but a statutory rule of practice. Certainly no case has been cited which justifies any doubt that, except as modified by statute, *Boyd v. Kienzle, supra,* states the law established in this state. But there is no statute which affects the application of the rule to such a case as this. Code, art. 50, and art. 26, sec. 21, which deal with actions on joint obligations, do not deal with plural

judgments, but with entire judgments against less than the whole number of obligors bound by a joint or several obligation, and with the effect of a judgment against less than the whole number of persons as members of a partnership, or jointly liable under some writing obligatory. Sections 2 and 10; *Westheimer v. Craig,* 76 Md. 399, 407, 25 A. 419. Nor is there any other statute having any possible effect on judgments against joint obligors which is applicable to the facts in issue here.

Another objection to the declaration is that it joins the administratrix of Walter W. Alexander as a defendant, which would be improper even if the obligation was joint and her decedent a party thereto. *Wolfe v. Murray,* 96 Md. 727, 54 A. 876; 1 *Poe, Pl. & Pr.* sec. 401.

For the reasons stated, it follows that the declaration was defective and the demurrers thereto properly sustained. The plaintiff was, however, entitled to maintain separate actions against the several defendants, and since it was entitled to amend its declaration by striking out parties improperly joined upon seasonable application, it should have been permitted to make such an amendment. But as the record fails to show that any such application was made, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*