585 A.2d 252

Peter **HILL**

v.

**STATE of Maryland.**

**No. 575, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 4, 1991.

Ira C. Cook (Kevin P. Foy and Birrane, Harlan & Cooke, on the brief), Baltimore, for appellant.

Lawrence H. Norton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Areta L. Kupchyk, Staff Atty. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before ROSALYN B. BELL, DAVIS, JJ., and JOHN F. FADER, II, Judge, Specially Assigned.

ROSALYN B. BELL, Judge.

This case involves the enforcement of a bail bond filed with a power of attorney in the District Court. The bail bond exceeded the limit authorized by the surety in the power of attorney. The sole question is whether that bond may be forfeited later in the circuit court against the

surety. We hold that under the facts of this case the surety may not be held liable on the amount in excess of the limit stated in the power of attorney. We will explain, but initially we will review the facts of this case.

On July 25, 1989, Peter Hill was charged with a violation of the Maryland narcotics laws. The District Court of Maryland for Baltimore City set bail at $50,000. Bail bondsperson Gladys Williams presented a bail bond for that amount on July 29. Williams signed the affidavit required by Rule 4–217(d)(3), stating that she was "authorized to engage the Surety Insurers shown on the attached bail bond, as surety on that bail bond, pursuant to a valid general or special power of attorney." She submitted 10 separate power of attorney forms, the numbers of which were recorded on the bail bond. Those powers of attorney were limited to $5,000 each and contained, in bold-faced type, the express limitation that the power was "void if used with other powers of this company, void if used to furnish bail in excess of the stated face amount of this power, and can only be used once. The obligation of the company shall not exceed the sum of FIVE THOUSAND DOLLARS." The surety is American Bankers Insurance Company of Florida (American Bankers), appellants.[1]

A criminal information was filed against Hill in the Circuit Court for Baltimore City on September 25, 1989. When Hill failed to appear on November 1, 1989, a bench warrant was issued and the bond was ordered forfeited. Williams, through her business name of Advantage Bail Bonds, sought and was granted an extension on the forfeiture to bring Hill into court. On March 22, 1990, counsel purportedly for American Bankers sought a second extension. On May 7, 1990, the surety filed a petition to have its liability

---

1. While American Bankers is the real party in interest, the case was captioned in the circuit court in the name of the criminal defendant for whom the bond was posted. The case remained captioned in this manner to avoid confusion in the circuit court when the mandate is filed.

limited to the authorized $5,000 and to strike the forfeiture of the remaining $45,000.

A hearing on this petition was held on May 7, 1990. An employee of the bail department of the circuit court testified that the bond was sent to the circuit court from the District Court with the affidavit of the bondsperson and the powers of attorney. She also stated that the circuit court would not have accepted the bond because it had been notified by American Bankers that it did not allow "stacking."[2] She further testified that she understood that a directive of the District Court did allow stacking and that the circuit court was aware of this practice. No directive was offered in evidence nor are we aware of any. The witness made no representation regarding whether American Bankers knew of the District Court policy or had acceded to it. The bond itself, dated July 29, 1990, contained a statement that the full fee for the $50,000 bond had been charged. The circuit court denied the petition of American Bankers to strike any part of the forfeiture.

The court ruled that laches applied in this case and, in support of that proposition, found: (1) the District Court had issued a directive to accept stacked powers; (2) bail bondsperson Williams certified that she received a premium for the $50,000 bond and defendant was released on the basis of the stacked powers posted with the court; (3) the District "Court was not advised or aware that there was any limitation on the power of Ms. Williams, the bondsman, to file the bonds which were filed"; and (4) the stacking had been going on for some time and was a practice which apparently had been approved by the District Court and engaged in by the bonding company. He concluded that in the "absence of some evidence that this Court engaged in some improper activity, the equities of" the situation demanded the surety pay the full amount. The circuit court judge later conceded that the circuit court would not have

---

**2.** Stacking refers to the practice of using more than one limited power of attorney in order to meet the amount of the bond.

accepted the bond in the initial circumstances, and stated: "If our Clerk's Office had accepted this bond in its form, then I believe you would probably be correct and I would have ruled in favor of the bonding company."

## Scope of Review

 Preliminarily, the State claims that in order to prevail appellant must establish that the trial court acted arbitrarily or unreasonably in refusing to set aside the forfeiture and cites *Allegheny Mutual Casualty Co. v. State*, 234 Md. 278, 286, 199 A.2d 201 (1963), and *United States v. Nolan*, 564 F.2d 376, 378 (10th Cir.1977). That principal is applicable where an unchallenged bond is at issue, a defendant has failed to appear, and the surety seeks full or partial relief from the forfeiture.

 This, however, is not a question of the discretion of the court to enforce an unchallenged bond; this is a question of law regarding whether the bond itself is enforceable. Only if the bond is enforceable does the issue of the discretion of the court to set aside a forfeiture arise.

## Agency

 The authority of the agent to act for the principal is the essence of the relationship between a principal and an agent. *See Proctor v. Holden*, 75 Md.App. 1, 20, 540 A.2d 133, *cert. denied*, 313 Md. 506 (1988). The authority may be actual or apparent. *Progressive Casualty Ins. Co. v. Erhardt*, 69 Md.App. 431, 440, 518 A.2d 151 (1986). That authority, however, may be subject to limitation. *Progressive Casualty*, 69 Md.App. at 439, 518 A.2d 151. If that limitation is brought to the attention of the party with whom the agent is dealing, the power to bind the principal is subject to that limitation. *Union Trust Co. v. Poor & Alexander*, 168 Md. 400, 406, 177 A. 923 (1935). Generally, one who deals with an agent knowing of the limitations cannot hold the principal beyond that limit. Restatement (Second) of Agency § 166 (1958). In fact, a third person must use reasonable diligence and prudence to ascertain

whether an agent is acting within the scope of his or her powers. *Prince George's Country Club v. Edward R. Carr, Inc.,* 235 Md. 591, 609, 202 A.2d 354 (1964). Moreover, if the act of an agent requires written authority, those dealing with him or her are charged with notice of that fact and any limitation or restriction contained in that written authority limits the liability of the principal. Restatement (Second) of Agency § 167 (1958).

When an agent is "acting under a defined and limited authority, the extent of which was known to" the person dealing with the agent, the principal's liability must be limited to the express scope of the agent's authority. *Union Trust Co.,* 168 Md. at 405–06, 177 A. 923. Such limits may be ineffective if, with knowledge of all the facts, the principal either waives the act of the agent in exceeding his or her authority or adopts his or her act. *Progressive Casualty Ins. Co. v. Ehrhardt,* 69 Md.App. 431, 441–42, 518 A.2d 151 (1986); *Hartman v. National Council of Knights and Ladies of Security,* 76 Or. 153, 147 P. 931, 934 (1915).

The circuit court stood in the shoes of the District Court so far as the bond was concerned, *see* Rule 4–217(f) and (i), and had no greater or lesser rights of forfeiture. Moreover, the powers limiting the amount accompanied the bond and were delivered to the circuit court. The circuit court then knew or should have known that the surety had limited its exposure to $5,000.

The circuit court was well aware of the limitation on stacking contained in the power of attorney. The District Court likewise knew or should have known of that limitation. While the State contends the limitation was ambiguous, the trial judge made no such finding. Moreover, the limitation appeared clearly on the power attached to the bond. The finding by the court to the contrary was clearly erroneous.

The State points out, however, that it was uncontroverted that the District Court issued a directive that permitted stacking of powers; that such stacking was to be

accepted; and that the bondsperson received the fee for the full $50,000 bond. The circuit court judge drew no inference from this that the surety knew or should have known of the District Court's directive and, therefore, the surety waived the stacking limitation or was estopped to raise it. Furthermore, we do not see that such inferences would be appropriate under the evidence presented. This is not to say that the facts, if properly developed, might not have shown that American Bankers knew of the District Court's directive or actually did receive the premium for the $50,000 bond.[3] If either or both had been shown, it would present quite a different case. The trial judge, seemingly aware of the deficiencies in the evidence, fell back on laches.

## Laches

An unreasonable delay in enforcing one's rights constitutes laches. It involves both that delay and the prejudice resulting from that delay. *Inlet Associates v. Assateague House Condominium Ass'n,* 313 Md. 413, 438–39, 545 A.2d 1296 (1988). The first date on which the court could infer the surety knew of the stacking was March 22, 1990. On that date, counsel for the surety sought the second extension of time within which to locate Hill. On May 7, 1990, the surety petitioned to strike the forfeiture of the bond based upon the stacking. No evidence was produced that established that the surety knew or should have known about any stacking prior to the request for an extension of time, much less the stacking specifically at issue in this case. Conceivably, some inference could have been drawn from the fact that the bond premium on $50,000 was paid according to the bond acknowledged for American Bankers by agent Williams. The trial judge, however, made no such inference.

---

**3.** As pointed out earlier, the bondsperson had signed an affidavit stating that a $4,500 fee had been charged for the bond. There was no evidence in the record, however, that American Bankers knew of or received that fee.

38

Furthermore, all the evidence indicates that as of November 1, 1989 Hill was among the missing. Any delay in notifying the court of the surety's strict policy against stacking powers of attorney after that date caused no prejudice to the State.

JUDGMENT REVERSED. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.