RAMSBURG ET AL. *v.* SYKES ET AL.

[No. 128, September Term, 1959.]

*Decided February 16, 1960.*

*Motion to reconsider assessment of costs filed by one of the appellees (Parker) February 24, 1960, denied March 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Bernard F. Goldberg* for appellants.

No brief and no appearance for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The question involved in this appeal is whether or not it was properly established in the trial below that the appellants (the Ramsburgs) are liable for the payment of certain surveying charges made by the appellee for surveying land belonging to the other appellee.

The case is unusual to the extent that, while not submitted upon an agreed statement of facts or stipulation, there does not seem to be a single dispute in the facts.

Jason A. Parker, one of the appellees, was the owner of some seven acres of unsubdivided land situate at the southwest corner of U. S. Route 40 at its intersection with Chatham Road in Howard County. Immediately west of the intersection, Parker operates a milk bar on a portion of the land and a fuel oil business adjacent thereto. In or about the month of April, 1957, Alva S. Ramsburg (Ramsburg), one of the appellants, approached Parker with reference to the purchase of a part of the land adjoining and to the west of the fuel oil business, Ramsburg explaining to Parker that the purpose of the Ramsburgs in purchasing the land was to erect a building and lease it to a newly organized building and loan association (Association). After negotiations, Parker agreed to sell for a price of $5,000 net to him, and Ramsburg agreed to pay the $5,000 and a surveyor to lay off *his lot*.

Guy C. Sykes, the other appellee, who is a surveyor, contacted Parker and Ramsburg in regard to surveying the lot which the Ramsburgs were purchasing from Parker. Sykes, Parker and Ramsburg met upon the property and designated the boundaries of the lot to be surveyed. When the agreed upon survey was completed, Sykes delivered the same to Ramsburg with his bill for services rendered, which was promptly paid in full.

Subsequently, T. Hunt Mayfield, an attorney who was connected with the newly organized Association that was the prospective tenant of the Ramsburgs, contacted Mr. Parks, an attorney who represented Parker. They learned through the Zoning Commissioner for Howard County that the Planning Commission required what are termed "a preliminary plan" and "a final plat" of the entire tract owned by Parker which included laying out the whole seven acres in lots and roads and a showing of the height and other dimensions of Parker's existing buildings thereon before the transfer of the portion thereof purchased by the Ramsburgs. This requirement of the Planning Commission was based upon the fact that Parker had two existing buildings which it regarded as separate commercial operations and some question of a right of way was involved. Without consultation with, or to the knowledge of, the Ramsburgs, Mayfield contacted Sykes and ordered the preliminary and final plans prepared. At the trial, there was considerable testimony offered concerning whether or not the requirement of the Planning Commission was valid, but the trial court made no determination thereof, but assumed that it was. There was also testimony, which the trial court apparently accepted as true, that neither of the appellants was notified of this requirement nor of the fact that a survey and a plat of Parker's whole tract had been ordered from Sykes. It was shown that neither Parker nor Ramsburg knew of the requirement when they were negotiating the agreement for the sale and purchase of the Ramsburgs' lot.

When the preliminary and final plats were completed, Sykes rendered a bill to Mayfield on "Acct. Jason A. Parker Subdivision." This bill was forwarded by Mr. Mayfield to Mr. Parks, the attorney of Parker, who, in turn, forwarded it to Parker on December 10, 1957. The bill was not paid. In or about May of 1959, Mr. Sybert, the attorney for Sykes, wrote a letter to Ramsburg with reference to the payment of the outstanding bill. Ramsburg testified that upon its receipt he immediately called Sykes and asked him if he owed any part of the bill and Sykes replied that Ramsburg had paid for

his work and that this was not his bill. This was not denied by Sykes.

Sykes sued Parker in the Circuit Court for Howard County in a narr that contained several common counts and one count which alleged that Parker "requested" the survey for which he "agreed and promised to pay, but on demand refused to pay." Parker impleaded the appellants (the Ramsburgs) as third-party defendants, alleging that they and Parker "had entered into a contract" whereby the appellants "agreed to pay the original plaintiff [Sykes] for all survey work, which is the subject matter of this suit." The original plaintiff, Sykes, did not assert any claim against the third-party defendants, the Ramsburgs, by an amended or separate pleading in accordance with Rule 315 d 1. The trial court rendered a verdict in favor of the original defendant, Parker, for costs, and one for the original plaintiff against the third-party defendants for the amount of the bill rendered for the survey. The Ramsburgs, alone, appeal.

The appellants' first two contentions may properly be considered together. They claim that they did not order the survey work for which the suit was brought, nor did the evidence show that there was any relationship of agency in fact whereby their agent directed the work to be done, or a situation whereby any responsibility for the payment of the appellee's claim was cast upon them by implication of law. It is conceded that the appellants did not order the work done.

There can be little doubt that whether or not an agency in fact has been created is to be determined by the relations of the parties as they exist under agreements or acts, and the ultimate question is one of intention. *American Casualty Co. v. Ricas,* 179 Md. 627, 631, 22 A. 2d 484. See also 2 Am. Jur. *Agency,* Sec. 24; *Restatement, Agency,* Sec. 8; 2 C.J.S. *Agency,* Sec. 17; 2 *Williston, Contracts,* (3rd ed.), Sec. 274. There was no testimony offered in an attempt to show that the appellants had by any agreement on their part created anyone their agent in fact to order or to direct that the survey work be done. On the contrary, the evidence was specifically to the effect that they had not done so; and there

was no evidence of ratification by the appellants of the order that the survey work be done. Likewise, there was no evidence, we think, that disclosed any conduct of or action by the appellants whereby an implied agency was created by them to order the additional survey work done. We conclude, therefore, that the appellants did not order the survey work, nor did they create any agency relationship, either express or implied, whereby anyone was authorized to order this survey made at their expense.

The trial court, however, in rendering his verdicts based them upon the law, as he concluded it to be, in a previous case tried by him that involved the question of liability for surveying costs as between a purchaser and seller of a farm. He stated, "[t]he only case or law I could find on the subject [no reference being made to the case or the authority for the law] was that, in the absence of a specific agreement, the purchaser in this area, contrary to some of the western states, is the one who must bear the [surveying] cost."

If we assume, without deciding, the trial judge was correct in his conclusion as quoted, it would not be applicable to the facts in the instant case. There, the survey was of the land actually purchased; here, the surveying charges for the land bought have been paid in full by the purchaser in accordance with his agreement, the contest here relating only to charges for surveying additional land owned and retained by the seller. As it was found by the court below, and seems to be conceded by the parties, that neither Parker nor Ramsburg knew of the requirement of the preliminary and final plans, entailing additional costs, at the time of their original agreement, it may well be that because of the explicit terms thereof [Parker to receive $5,000 net; Ramsburg to pay $5,000, plus the cost of surveying *the lot purchased*], further negotiations between them were desirable to ascertain whether the agreement should be abandoned or the details for the payment of the additional costs agreed upon; but it certainly cannot be held that under the circumstances of this case, the law implies a contract upon the part of the Ramsburgs, and imposes a duty upon them, to pay for the additional surveying costs of

Parker's land. Cf. 17 C.J.S. *Contracts,* Sec. 4, p. 320. We, therefore, conclude that there was no proper basis upon which a judgment could have been rendered against the appellants.

The appellants also say that the court was without authority to enter judgment in favor of the original plaintiff directly against them, as the original plaintiff did not assert any claim against them after they were made third-party defendants, in accordance with Rule 315 d 1. Rule 315 a provides that where a defendant claims that a person not a party to the suit is or may be liable to *him* (it formerly included here the words "or to the plaintiff" [1]) for all or part of the plaintiff's claim against *him,* such party may be made a third-party defendant. Section d 1 of said Rule now states that the plaintiff or third party *may* (it formerly stated "shall" with reference to the plaintiff) assert against the other any claim he has against the other party which arises out of the subject matter of the plaintiff's claim against the defendant. Section e 2 of the Rule then provides that the court may render one or more judgments on the claims *asserted* in the action, "but no judgment shall be rendered for the plaintiff or the third party against the other *where no claim has been asserted pursuant to the provisions of subsection 1 of section d of this Rule."* (Italics added.) The procedure outlined by this phase of the Rule seems to be clear and precise,[2] but from what we have said above we do not need to decide the question raised here at this time.

> *Judgment reversed, without a new trial, the appellee Parker to pay the costs.*

---

1. See Code (1951), Article 50, Section 26, the forerunner of Rule 315.

2. For the history of Rule 315, see Stem v. Nello L. Teer, 213 Md. 132, beginning at page 141. See also Explanatory Notes, Code (1947 Cum. Supp.) pp. 2103-2105, and 1 Barron and Holtzoff, Federal Practice and Procedure, beginning at page 833, which deals with Federal Rule 14, from which our Rule 315 was taken in substantial part.