Walter J. HARE and Elizabeth F. Hare

v.

FAMILY PUBLICATIONS SERVICE,
INC., a Delaware corpora-
tion, et al.

Civ. No. 71–152–M.

United States District Court,
D. Maryland.

May 15, 1972.

See also, D.Md., 334 F.Supp. 953.

**680**

Sheldon H. Braiterman, and Michael J. Milton, Baltimore, Md., for plaintiffs.

H. Vernon Eney and Lee M. Miller, Baltimore Md., for all defendants except Kingston.

Benjamin C. Howard, and L. Keith Simmer, Baltimore, Md., for defendant Kingston.

JAMES R. MILLER, Jr., District Judge.

### Memorandum Opinion and Order

This suit evolves from the closing of the Baltimore office of a magazine subscription service, Family Publications Service, Inc. (FPS). Like some magazine articles, its exposition is being presented in installments. The first chapter, 334 F.Supp. 953 (1971), dealt with the relevancy or other propriety of the plaintiffs' interrogatories which were directed to factual issues raised by defendants' motions to dismiss on jurisdictional grounds. This opinion, chapter two, relates to all of the defendants' motions to dismiss as well as to a defense motion to strike several paragraphs of the complaint and plaintiffs' motion for leave to amend the third amended complaint for the purpose of stating an additional cause of action.

Walter J. Hare and Elizabeth F. Hare, the plaintiffs, were the branch manager and the office manager, respectively, of FPS's branch office. FPS is a Delaware corporation with its principal place of business in New York, and is the wholly owned subsidiary of defendant Time, Inc. (Time), also a Delaware corporation with its principal place of business in New York. Defendants William J. Conway (Conway), Samuel B. Ananian (Ananian), and John W. Watters (Watters) were respectively the chairman of the board, the comptroller, and a member of the board of FPS at all relevant times. Defendant Robert C. Kingston (Kingston) was a New York partner in the national accounting firm of Ernst & Ernst.

Diversity of citizenship is alleged as the basis for jurisdiction. The parties agree that service of process must be obtained under the Maryland "long arm" statute, Md.Ann.Code art. 75, §§ 94–100 (1969 Repl.Vol.). The basic causes of action alleged were set out in the earlier opinion in this case, 334 F.Supp. at 954–955. The parties agree that *in personam* jurisdiction, if it exists, as to Time and the individual defendants is conferred by Md.Ann.Code art. 75, § 96(a) (3) or § 96(a) (4) (1969 Repl. Vol.). Said sections provide in pertinent part as follows:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

\* \* \* \* \* \*

"(3) Causing tortious injury in this State by an act or omission in this State;

"(4) Causing tortious injury in this State or outside of this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from goods, food, services or manufactured products used or consumed in this State;"

\* \* \* \* \* \*

As this court has previously stated in Topik, et al. v. Catalyst Research Corporation, et al., 339 F.Supp. 1102, at 1105–1106 (D.Md.1972):

"Application of the Maryland Long Arm statute involves two steps. Haynes v. James H. Carr, Inc., 427 F. 2d 700, 703 (4th Cir.) cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d

245 (1970). First, the statute itself must be interpreted to determine if, in light of the facts in this case, service of process over the non-resident directors is authorized by the statute. This court is bound by authoritative interpretations of the Maryland Long Arm statute by the Court of Appeals of Maryland. Shealy v. Challenger Mfg. Co., 304 F.2d 102, 104 (4th Cir. 1962). Second, if service is within the bounds of the statute, this court must then determine whether said service violates the due process clause of the Constitution. In deciding the constitutional issue, this court must follow decisions of the Supreme Court, and where the Supreme Court has not spoken, the Fourth Circuit. Piracci v. New York City Employees' Retirement System, 321 F.Supp. 1067 (D. Md.1971)."

## I

Time is alleged to have intentionally induced a breach of the contract which existed between the plaintiffs[1] and FPS and is further alleged to have conspired with FPS and the individual defendants to induce said breach.

■ For the purposes of the jurisdictional argument only, Time has conceded that it induced the breach of the contract and has admitted engaging in a persistent course of conduct in the State of Maryland. These concessions would clearly satisfy the preconditions of § 96(a) (4) of the "long arm" statute provided there has been "tortious injury" giving rise to the cause of action. Time, however, asserts that it has a privilege to induce a breach of contract by FPS, its wholly owned subsidiary. In so doing, Time contends that such privilege negates any possibility of a

tort being committed and therefore no "tortious injury" under § 96(a) (4) exists.

For the reasons expressed in the previous opinion in this case, this court holds that the alleged privilege is a matter of affirmative defense and that sufficient facts have been alleged and admitted, establishing *prima facie* the existence of "tortious injury," to satisfy the Maryland "long arm" statute. Furthermore, Time concedes that it has the necessary contacts with Maryland to comply with the due process requirements of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Therefore, Time's motion to dismiss, based on lack of *in personam* jurisdiction, will be denied.

## II

The motions to dismiss filed by the individual defendants, Conway, Watters, and Ananian, present a substantial question. The complaint seems to allege the same causes of action against them as against Time. Although conceding as did Time that for purposes of the jurisdictional argument only they each participated in the alleged inducement to breach the contract,[2] these individual defendants, all employees or members of the board of FPS, assert a defense of privilege related to that raised by Time. For the reasons expressed in my prior opinion, this court reaches the conclusion that the asserted privilege is a matter of affirmative defense and that a sufficient *prima facie* showing of "tortious injury" has been made here to satisfy the "long arm" statute.

Unlike Time, however, Conway, Watters, and Ananian do not admit to a per-

[1]. All defendants deny that Elizabeth F. Hare is a party to the contract in issue.

[2]. The answers of Conway, Watters, and Ananian to plaintiffs' interrogatory 62 make it clear that, in fact, the defendants' contention is that Mr. Ananian played no part in the termination of the contract in issue or in the closing of the Baltimore

branch office. Similarly, the answers to plaintiffs' interrogatory 61 show that their factual contention is that the sole connection of Mr. Watters to the matter was his action as a director of FPS participating in New York in the deliberation and voting on the resolution of the FPS board of directors which authorized the termination of the contract.

sistent course of conduct within this state. To the contrary, answers to the plaintiff's interrogatories numbered 57, 58, and 59 specifically deny any visits by Conway, Watters, or Ananian to Maryland in the past three years for any purpose. These three defendants also deny receiving any substantial revenue from "goods, food, services or manufactured products used or consumed in this State." Plaintiffs' counsel, at oral argument on the motions, conceded that the absence of a persistent course of conduct by Conway, Watters, and Ananian in Maryland and the absence of substantial revenues flowing to them from Maryland eliminate the possibility of *in personam* jurisdiction over them arising under § 96(a) (4).

Plaintiffs argue, however, that § 96(a) (3) gives jurisdiction over these three defendants under the circumstances of this case. The crucial jurisdictional fact under this section of the "long arm" statute is the situs of the place where the alleged acts of Conway, Watters, and Ananian took place. There is no evidence that these three defendants personally performed any acts in Maryland. As a matter of fact, all the evidence is to the contrary.

■ While an agent is liable for *his own* tortious acts committed in the performance of his agency, Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); Smith v. Sherwood, 308 F.Supp. 895 (D.Md.1970), he is not liable for the acts of other agents of his principal. Thus, for example, while Conway would be liable for his *own* tortious acts, if any, in inducing a breach of contract even though he was acting for either Time or FPS (laying aside for present purposes the contention of the defendants that a privilege exists), he would not thereby be liable for other similar tortious acts of his co-agents for the corporation. The tortious acts, if any, which were performed personally by Conway, Watters, and Ananian all took place in New York or New Jersey and not in Maryland.

Since Conway, Watters, and Ananian personally performed no acts in Maryland, and since they are not responsible for the acts of the co-agents of the corporation, personal jurisdiction over these individual defendants under § 96(a) (3) must be grounded, if at all, upon a contention and showing by the plaintiffs that tortious acts in Maryland were performed *by the agents of Conway, Watters, and Ananian.*

■ Whether or not an agency in fact has been created is to be determined by the relations of the parties as they exist under agreements or acts. The ultimate question is one of intention. Ramsburg v. Sykes, 221 Md. 438, 158 A.2d 106 (1960). It is settled that the burden of alleging and proving jurisdictional facts rests upon the plaintiffs. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Haynes v. James H. Carr, Inc., *supra*; Malinow v. Eberly, 322 F.Supp. 594 (D.Md.1971).

The third amended complaint in paragraph 8 alleges that Conway, Watters, and Ananian are employees of FPS and that they acted for Time and FPS. Paragraph 20 thereof alleges that Time controlled FPS and instigated the termination by FPS of all its branch managers. Paragraph 2 of the third amended complaint, without further specificity, alleges that Conway, Watters, and Ananian committed tortious injury . . . "by acts taking place both within and without this State [Maryland]." There is no specific allegation that any acts were performed in Maryland by persons who were acting as agents for Conway, Watters, and Ananian.

■■ Even so, in arguing in opposition to the motions to dismiss, the plaintiffs claim that the attorneys, accountants and Pinkerton guards who closed the Baltimore branch office were the agents of Conway, Watters, and Ananian and, therefore, the acts of these agents in Maryland are sufficient under § 96(a) (3) to establish *in personam* jurisdiction. No evidence exists, however,

that these persons were agents for Conway, Watters, or Ananian. The answers to plaintiffs' interrogatories 60, 61, and 62 show, without contradiction, that Ananian performed no acts in connection with the torts alleged, that Watters performed no such acts other than to participate in the adoption of the resolution by the FPS board of directors authorizing the termination of the branch office contracts, and that Conway's participation was in the adoption and implementation of the FPS board resolution. There is no evidence that the personnel engaged in Maryland to implement the FPS board resolution were engaged as or acted as agents of either Conway, Watters, or Ananian. The resolution authorized Conway and N. J. Nicholas, Jr. ". . . in the name and on behalf of the Corporation [FPS]" to terminate the Hare contract and ". . . to take all such action . . . in the name and on behalf of the Corporation . . . as they shall deem necessary or desirable." Conway was Chairman of the Board of FPS and Nicholas was Vice President. The mere fact that a director or officer of a corporation, pursuant to authority granted to him, hires a person to perform services for the corporation, without more, does not constitute the person so hired an agent of the director or officer. Particularly is this true in a jurisdictional sense where due process under the doctrine of *International Shoe, supra,* requires a nexus between the putative defendant and the state in which jurisdiction is sought to be sustained. In order to establish the required nexus vicariously through the acts of an agent, the agency must be based upon more than mere supposition or wishful thinking by the plaintiffs.

The general rule stated above is sought to be made inapplicable by the argument that Conway acted for reasons other than the corporate reasons of FPS in hiring the persons who actually physically carried out the closing of the Baltimore branch office. Such facts, if true, and assuming in addition it could be shown that Conway acted for personal reasons rather than on behalf of someone else, conceivably could establish that the use of the corporate shield was merely camouflage and might show that, in truth, the persons so hired were really agents of Conway rather than of FPS. *Cf.* Unicon Management Corp. v. Koppers Company, 250 F.Supp. 850 (S. D.N.Y.), aff'd 366 F.2d 199 (2d Cir. 1966). If the people hired in Maryland were in fact agents of Conway rather than of the corporation,[3] then the jurisdictional nexus of Conway to Maryland would be based upon the vicarious acts of Conway performed in Maryland by his agents.[4] To the contrary of those assumptions, however, the third amended complaint alleges that Time was really the instigator and director of all the activities. If the question here were whether jurisdiction over Time could be obtained vicariously through the acts of the ostensible agents of FPS (but arguably actually the agents of Time), the question might be a closer one which could require deferral of the jurisdictional decision until the trial on the merits under the procedure approved in Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). There is no allegation in the third amended com-

3. It would be technically possible for an officer of a corporation to act on his own personal behalf as well as on behalf of the corporation in appointing or hiring agents, resulting thereby in an agency relationship with two principals. No facts have been alleged or proved here, however, tending to establish this dual agency relationship.

4. The same result would, of course, obtain as to Watters or Ananian in the event the persons hired to perform acts in Maryland were in fact agents of Watters or Ananian respectively. The discussion here centers on Conway since he actually engaged some of the people to perform acts in Maryland and, therefore, has a closer contact with them than Watters or Ananian. There is no allegation or evidence of any kind that Conway, in hiring or engaging persons to close the FPS office in Baltimore, was acting on behalf of Watters or Ananian individually.

plaint, however, nor is there any evidence that Conway acted for himself in any way in appointing agents or that Watters or Ananian appointed any agents for themselves or expressly or impliedly authorized anyone else to do so for them. There is no basis to find jurisdiction over Conway, Watters, and Ananian under § 96(a) (3) through an agency theory.

Nor may jurisdiction over individual officers and employees of a corporation be predicated merely upon jurisdiction over the corporation itself. Wilshire Oil Company of Texas v. Riffe, 409 F.2d 1277 (10th Cir. 1969); Topik, et al. v. Catalyst Research Corporation, *supra*; Path Instruments International Corp. v. Asahi Optical Co., 312 F.Supp. 805 (S.D.N.Y.1970); Unicon Management Corp. v. Koppers Co., *supra*.

Since no *in personam* jurisdiction exists over Conway, Watters, and Ananian, their motions to dismiss will be granted.

### III

Defendant Kingston is a general partner in New York with the national accounting firm of Ernst & Ernst. He allegedly conspired with Time and FPS to induce the breach of contract. Although it is not clear, the third amended complaint may also charge Kingston with the actual inducement to breach of said contract. Ernst & Ernst was hired by Conway (ostensibly on behalf of FPS) to deal with the auditing and the inventory problems arising from the closing of the FPS Baltimore branch office. Kingston prepared for Ernst & Ernst, in New York, a program to help Ernst & Ernst fulfill its obligations to FPS.

Kingston, in an affidavit which is unrefuted and was filed with his motion to dismiss, denies that he does business in Maryland and denies that he solicits any business in Maryland. Kingston also stated that he does not visit Maryland for any purpose. The percentages of revenues which Kingston has derived from services used in Maryland for the past five years, when compared to his total annual income for the same period, are all less than 1%. For example, the 1970 figure was .016%. Although no annual income figure is given, under the circumstances this court finds that Kingston has not derived substantial revenues from this state. Under these facts Kingston is not subject to *in personam* jurisdiction by virtue of § 96(a) (4).

Since there has not been oral argument on § 96(a) (3) as a basis for jurisdiction over Kingston, his counsel having been unavoidably absent when the motions of the other defendants were argued, this court will defer ruling on that point until after a fourth amended complaint is filed pursuant to Part VII of this opinion, at which time argument can be scheduled if appropriate.

### IV

Having eliminated all of the individual defendants except Kingston, there remain motions to dismiss made by Time, FPS, and Kingston relevant to the claims of Elizabeth F. Hare. They argue that the third amended complaint fails to state a claim upon which relief can be granted and that even if a claim has been stated, it does not meet the jurisdictional prerequisite of $10,000.

The complaint alleges that shortly after Walter J. Hare's 1957 written contract with FPS was executed, it was modified by an oral agreement, granting certain rights to Elizabeth Hare. The complaint incorporates by reference two subsequent written modifications of the contract, one in 1968 and one in 1970, in neither of which is mention made of Elizabeth F. Hare. Defendants argue that the parol evidence rule precludes the plaintiffs from introducing testimony as to an alleged oral modification of the 1957 contract in view of the later written modifications and that Elizabeth Hare cannot therefore properly allege a contract upon which she can sue as a party plaintiff.

This court does not believe it appropriate to determine the applicability of the parol evidence rule in this case merely

from the complaint and the exhibits referred to therein. As Professor Wigmore has said in his treatise on Evidence, Vol. IX, § 2430 (3d ed.):

"(1) Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties thereto* . . . .

"(2) This intent must be sought where always intent must be sought, namely in the *conduct and* language of the parties and the *surrounding circumstances.* The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover . . . .

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transactions on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by most careful judges (footnote omitted), and is in contrast with the looser and incorrect inquiry . . . whether the alleged extrinsic negotiation contradicts the terms of the writing . . . ." (Emphasis in the original).

Conceivably, the plaintiffs could prove a set of facts under the pleadings which would establish negotiations and agreements, not intended to be covered by the 1968 or 1970 agreements, which would give Elizabeth Hare a contractual right upon which she could maintain the present cause of action. Again conceivably, although less likely under the pleadings, a subsequent oral modification or custom and usage could be set up by Elizabeth Hare which would provide her a right of action. In any event, this court feels that such an opportunity, however remote, cannot be denied Mrs. Hare merely on the pleadings without running afoul of the doctrine of Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80 (1957), that a complaint may ". . . not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. at 102. The motions of all defendants to dismiss the action of Elizabeth Hare for failure to state a claim will be denied.

V

Defendant FPS has moved under Rule 12(f), F.R.Civ.P. to strike paragraphs 20 and 24 of the third amended complaint. Defendants argue that those paragraphs are immaterial, impertinent, and scandalous.

Paragraph 20 refers to the closing of all 33 of the branch offices of FPS and sets forth certain of the alleged reasons of Time and FPS for causing the closing of those offices. Although some of the language is conclusory in nature and perhaps unnecessary before a motion to strike will be granted the allegations must be both immaterial and prejudicial. Barnes v. A. Sind & Associates, 32 F.R.D. 39 (D.Md.1963), rev'd on other grounds, 341 F.2d 676 (4th Cir. 1965). There is a possibility that the circumstances of the closing of the other FPS branch offices may be relevant to this suit and, therefore, the motion to strike paragraph 20 will be denied.

Paragraph 24 alleges the failure and refusal of Conway and Watters to discuss settlement of the case with Walter Hare. Such information is absolutely irrelevant and may be prejudicial. Therefore, the motion to strike paragraph 24 of the third amended complaint will be granted.

VI

Plaintiffs have filed a motion for leave to amend the third amended complaint. The amendment, as submitted, would raise a new claim for relief

charging all the defendants except Ananian with assault and battery of Mr. Hare through the actions of their alleged agent and attorney, H. Vernon Eney. Mr. Eney, the proposed amendment charges, assaulted Mr. Hare at the FPS branch office on the morning of February 9, 1971 when the office was closed. Rule 15(a), F.R.Civ.P. reads in part that "Leave (to amend) shall be freely given when justice so requires."

The request for leave to amend was filed on February 7, 1972, just two days short of the expiration of the Maryland statute of limitations for assault and battery cases. Md.Ann.Code art. 57, § 1 (1972 Repl.Vol.). The plaintiffs have known the facts behind the proposed amendment from the date this cause of action arose but have offered no excuse for delaying the presentation of the claim until after the complaint has been written and rewritten four times. The defendants have objected to the reception of the amendment because, they believe, it is not offered in good faith.

The acceptance of such amendments is a matter within the court's sound discretion. The delay in filing this request is one factor this court will consider, but delay, in and of itself, will not support a denial of the leave requested. Lloyd v. United Liquors Corp., 203 F.2d 789 (6th Cir. 1953); 3 Moore's Federal Practice, ¶ 15.08(4), p. 901, n. 10. This court believes that the main purpose behind the amendment is simply to bolster plaintiffs' arguments, as made to this court on February 3, 1972, that the individual defendants are subject to service of process in Maryland. In a separate section of this opinion the individual defendants (excluding Kingston on whom decision was reserved) were found not to be subject to service under the "long arm" statute. The decision on that point would have been the same even if the pleadings had contained the allegations of the proposed amendment. The proposed amendment does not ask to bring Mr. Eney into the suit as a party defendant, nor is the proposed amendment followed by an additional prayer for relief requesting greater money damages. All the circumstances surrounding the presentation of the proposed amendment lead this court to believe the amendment has not been offered in good faith. These same circumstances lead this court to find that justice does not require that the amendment be allowed. The motion of the plaintiffs for leave to amend to state the alleged assault and battery will be denied.

## VII

All courts have a broad and inherent power to control the case before them. Societe Internationale, etc., v. Rogers, 357 U.S. 197, 213, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Gumbel v. Pitkin, 124 U.S. 131, 146, 8 S.Ct. 379, 31 L.Ed. 374 (1888); 1 Moore's Federal Practice, ¶ 0.60(6). Where the federal or local rules do not specifically provide an answer to procedural questions, the individual court may require the parties to proceed in a manner not inconsistent with the federal rules. Rule 83, F.R. Civ.P.; Newell v. O. A. Newton & Son Co., 95 F.Supp. 355, 359–360 (D.Del. 1950). It appears to this court that the plaintiffs have not substantially complied with Rule 10(b), F.R.Civ.P. See Frankson v. Carter & Weeks Stevedoring Co., 9 F.R.D. 713 (E.D.N.Y.1949); see also 2A Moore's Federal Practice, ¶ 10.03, and cases cited therein. The present state of the plaintiffs' third amended complaint is such as to make it most difficult for this court to understand each of plaintiffs' claims and to understand against whom each of the claims is directed. Therefore, this court will require the plaintiffs to amend and restate their complaint. The fourth amended complaint should be divided into separate counts with each count specifying one claim for relief, and each count stating to which defendant or defendants it is directed. The fourth amended complaint will restate the plaintiffs' existing claims remaining against those defendants left in the case upon the signing and filing of this opinion and order.

Therefore, for the above stated reasons, it is this 15th day of May, 1972, by

Ordered that the motion to dismiss defendant Time, Inc., for lack of *in personam* jurisdiction be, and it is hereby denied; and it is further

Ordered that the motions to dismiss defendants Conway, Watters, and Ananian be, and they are hereby granted; and it is further

Ordered that the motions of defendants Time, Inc., Family Publications Service, Inc., and Kingston to dismiss as to Elizabeth F. Hare be, and they are hereby denied; and it is further

Ordered that defendant Family Publications Service, Inc.'s motion to strike is hereby denied as to paragraph 20 of the third amended complaint, and granted as to paragraph 24 of the third amended complaint; and it is further

Ordered that plaintiffs' motion to amend the third amended complaint be, and it is hereby, denied; and it is further

Ordered that the plaintiffs shall file a fourth amended complaint in accord with Part VII of the memorandum opinion herein; 20 days leave shall be granted to file said complaint.