James V. CERNIGLIA, et al.

v.

Robert S. PRETTY, et al.

Civ. No. JFM–86–2635.

United States District Court, D. Maryland.

Nov. 2, 1987.

William Meyer, William Cahill, Jr., Weinberg & Green, Baltimore, Md., for plaintiff.

David S. Harvis, Columbia, Md., Philip Andrew & Lee Ogburn, Kramon & Graham, Baltimore, Md., Richard Winelander, Lutherville, Md., Joseph Friedman, John H. Lewin, Jr., Venable, Baetjer & Howard, Baltimore, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

This action arises from the purchase by plaintiffs, James and Yvonne Cerniglia, of a liquor business known as the Freedom Spirit Shoppe, Inc. The defendants are Robert and Frances Pretty, the sellers of the business; James Sellors, a business

broker who effected the transaction; RGT Enterprises, Inc., Sellors' employer; and VR Business Brokers, Inc., of which RGT was a franchisee. Plaintiffs assert claims for violations of the Federal and Maryland Securities laws and for common law fraud and negligence. The gravamen of the claims is that Sellors misrepresented to them the past profitability of the Freedom Spirit Shoppe. The parties have filed cross motions for summary judgment on various issues of agency and limitations.

*Claims Against the Prettys*

■ Plaintiffs' claims against the Prettys are based entirely upon misrepresentations which Sellors allegedly made as the Prettys' agent. Plaintiffs do not allege that the Prettys personally made any misrepresentations or that they knew of Sellors' misrepresentations at the time they were made.

The relevant facts (viewing the evidence most favorably to plaintiffs) may be briefly stated. Plaintiffs became interested in purchasing a business when Mr. Cerniglia left the job which he had held for thirty years as a street sales supervisor for the Baltimore Sun. In August 1984 Mr. Cerniglia saw a newspaper advertisement run by RGT for the sale of a carry-out shop. He called the telephone number listed in the advertisement and spoke with Sellors. The two met shortly thereafter, and together they visited three or four businesses which were potentially for sale. One of these businesses was the Freedom Spirit Shoppe. Sellors had made a "cold call" there several months before and, while Mr. Pretty had then declined to sign a listing agreement with Sellors, he had indicated that he and his wife might be interested in selling their business if the price was right.

Cerniglia displayed an interest in purchasing the Freedom Spirit Shoppe, and Sellors returned to meet with the Prettys the same or the next day. After discussion Mr. Pretty signed a listing agreement (authorizing the sale of the property only to plaintiffs) which stated that "[t]he Seller hereby engages the Broker to sell the above-described property" and which obligated the Prettys to pay a commission upon the sale of the business. When the sale was ultimately consummated on October 6, 1984, the Prettys did pay the commission.

In September 1984 plaintiffs asked to review the financial statement for the business. Mrs. Pretty made arrangements to have Sellors and Mrs. Cerniglia visit the office of the Prettys' accountant to review this material. Sellors and Mrs. Cerniglia met at the accountant's office. Sellors conducted the review of the records and made representations to Mrs. Cerniglia about what those records meant and the profitability of the business. He also prepared at that meeting a "Confidential Buyers Business Evaluation," based upon the books and records which he reviewed. On this evaluation form Sellors stated that the business had been generating profits of $70,000 per year. Plaintiffs allege that this representation was false.

On this record it is undisputable that, assuming that Sellors was acting as an agent for the Prettys, he was acting as an agent for the plaintiffs as well. He approached the Prettys on plaintiffs' behalf, and he reviewed the records of the Freedom Spirit Shoppe on a confidential basis for plaintiffs. Plaintiffs themselves testified on deposition that they believed that Sellors was working for them and in their Reply Memorandum they virtually concede, as they must, Sellors' dual agency.

This concession is dispositive of plaintiffs' legal claims against the Prettys for monetary damages. Although there is no Maryland case directly on point, it is well established that "one principal is not civilly liable to another for the tortious acts of an agent who acts for both parties with their consent, unless he in some manner participates in the wrong." 3 *Am.Jur.* 2d, Agency, Section 280, at 783; *see also Hodges v. Mayes,* 240 Ga. 643, 242 S.E.2d 160, 162 (1978), *United Association of Journeymen v. Borden,* 160 Tex. 203, 328 S.W.2d 739, 744 (1959), *rev'd on other grounds,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963), Annot., 4 A.L.R.3d 224, 229 (1965). This rule embodies principles of fundamental fairness, particularly in a case such as

this where it was plaintiffs themselves who placed Sellors in contact with the Prettys and set into motion the stream of circumstances leading to the Prettys' sale of the business.

 Plaintiffs may, however, be entitled to rescind their contract with the Prettys on the basis of Sellors' alleged misrepresentations. Equity permits rescission of contracts based on misrepresentations by an agent even if his principal is entirely innocent of participation in the wrongdoing. *See Restatement (Second) of Agency,* Sections 259 and 263 (1958). This rule is based upon the general equitable principle that a person should not benefit from the fraud of another—a principle which is fully applicable in a case involving dual agency. If the Prettys in fact received significantly more for their business than it was worth as a result of Sellors' alleged misrepresentations, it would—all other things being equal—be inequitable for them to keep the extra sum at plaintiffs' expense.

 However, in a case where the person who has been unjustly enriched is himself innocent of wrongdoing, rescission and restitution are appropriate remedies only if the *status quo ante* can be restored. *See Restatement (Second) of Agency,* Section 259(2) (1958); *Restatement of Restitution,* Section 142(1) (1937); *cf. Larkin v. Appleton,* 274 Or. 671, 548 P.2d 499 (1976); *Osborne v. Hay,* 284 Or. 133, 585 P.2d 674 (1978). Thus, if the Prettys materially changed their position as the result of their sale of the Freedom Spirit Shoppe at a time that they did not know that any misrepresentation had been made, the sale should not be rescinded. Likewise, if the goodwill of the Freedom Spirit Shoppe has substantially diminished during the period of plaintiffs' ownership of it, rescission would not be proper. Further, if rescission were ordered, it would seem clear that the Prettys would be entitled to receive the income stream which they would have received from their business (minus any interest

income which they received as a result of the sale). These are matters which will have to be resolved at trial.[1]

### Claims Against Sellors, RGT and VRB Agency Issues

RGT contends that Sellors was not its agent, and VRB contends that RGT was not its agent.

 RGT's contention is without even arguable merit. It is based upon self-serving discovery responses which, in turn, are based solely upon an "independent contractor's agreement" between RGT and a personal service corporation of which Sellors was the principal. The question of agency depends upon the substance of the relationship between the purported agent and principal, not upon the gloss which they choose to place upon that relationship. *See, e.g., Ramsburg v. Sykes,* 221 Md. 438, 442, 158 A.2d 106, 108 (1960). Here, Robert Totter, the founder, president and sole stockholder of RGT, admitted on deposition that RGT authorized Sellors "to handle RGT's duties in regard to ... [the Cerniglias'] transaction." (Totter Deposition at 74). Further, while characterizing Sellors as an "independent contractor" and saying that he would have stopped Sellors from doing something during the course of his work only if it was "immoral and unethical," Totter also conceded that he and Sellors worked very closely together on all the transactions, including the one involved in this suit, on which Sellors worked for RGT. The simple facts are that (1) Sellors worked for RGT, (2) plaintiffs met Sellors as a representative of RGT when they responded to a newspaper advertisement placed by RGT and (3) thereafter Sellors, purporting to act on behalf of RGT and using its name, facilities and resources, brokered the sales transaction between plaintiff and the Prettys. His agency was established by principles both of actual and apparent authority. *See, e.g., Borg–Warner Acceptance Corporation v. Rossi,* 365 F.Supp. 56, 59 (D.Md.

---

1. It appears that since plaintiffs' only remaining claim against the Prettys is an equitable one, there is no right to a jury trial on that claim. If either plaintiffs or the Prettys disagree with this conclusion, they should file a motion and supporting memorandum requesting a jury trial on that claim within fourteen days of the date of this memorandum.

1972), *aff'd* 485 F.2d 1388 (4th Cir.1973); *Reserve Insurance Co. v. Duckett,* 240 Md. 591, 214 A.2d 754 (1965), *appeal after remand,* 249 Md. 108, 238 A.2d 536 (1968).

■ It is as equally clear that RGT was the agent of VRB. Again, the parties tried to formalize their relationship as something other than it was. Thus, the franchise agreement between them did contain a paragraph stating that the franchisee was not the agent of the franchisor but an independent contractor not authorized to make any contract, agreement, warranty or representation on behalf of franchisor. However, under the agreement VRB had the power to control virtually every aspect of RGT's business. Thus, for example, under the agreement (1) VRB had to approve Totter's purchase of the franchise; (2) RGT was required to operate its business "in strict accordance" with operations and training manuals created and provided by VRB;[2] (3) RGT's employees were to be trained in and were to utilize the business "system" developed and trademarked by VRB; (4) RGT was to promote itself as a VRB franchisee, using the VRB name in its publications and business forms; (5) VRB personnel had the right to inspect RGT's premises, observe the manner in which it rendered its services and to confer with its salespersons and customers to make sure that it was meeting VRB's standards of quality and was operating properly; and (6) VRB could terminate the franchise agreement at any time if RGT failed to comply with any of the requirements imposed by the franchise agreement, the operations manual or any operational memoranda issued by VRB. These powers gave VRB the effective right to control the way in which RGT and its representatives conducted their business, and it is this right to control which is all that is needed under Maryland law to establish a principal/agency relationship. *See Keitz v. National Paving & Contracting Co.,* 214 Md. 479, 491, 134 A.2d 296, 301 (1957); *B.P. Oil Corp. v. Mabe,* 279 Md. 632, 638, 370 A.2d 554, 557–58 (1977).[3]

*Limitations Issues*

■ In Counts IV and VI the Cerniglias have asserted claims against VRB, RGT and Sellors (as well as against the Prettys) for selling unregistered securities in violation of federal and Maryland law. There is a flat one year statute of limitations applicable to such claims both under federal and state law. This action was brought substantially more than one year after the consummation of the sale of the Freedom Spirit Shoppe. Accordingly, as counsel for plaintiff conceded at oral argument, these claims are time barred.

■ Defendants have also moved for summary judgment as to plaintiffs' securities fraud claims. These claims too are governed by a one year statute of limitations. However, both under federal and state law the "discovery rule" applies, tolling the running of the statute for the period that a plaintiff did not know, or reasonably should not have known, of the falsity of a misrepresentation. Here, defendants contend that plaintiffs should have known of the falsity of Sellors' alleged misrepresentation when the complete financial

---

**2.** Defendant never produced a copy of the operations manual in discovery or in opposition to plaintiffs' motion for summary judgment. The Court therefore assumes that the manual would substantiate plaintiffs' contention that VRB had the right to control RGT's operations. If this assumption is incorrect, VRB may move for a reconsideration of this Court's ruling on the VRB–RGT agency question within fourteen days of the date of this memorandum.

**3.** In his deposition Robert Totter unwittingly indicated that in his own view VRB had actual authority over RGT's activities. Apparently unfamiliar with the actual terms of the franchise agreement, he testified as follows:

Q. Was there anything in your franchise agreement which gave VR the right to revoke your franchise?
A. Yes.
Q. What sorts of things would give them that right to revoke your franchise?
A. Character deterioration, et cetera.
Q. How about failure to follow certain procedures or systems or methods they had?
A. You had to pay royalties, but I don't think they could do that. That would be getting to be something other than a franchise then.
(Totter Deposition at 47–48)

statements of the Freedom Spirit Shoppe for fiscal year 1984 were made available for their review in the latter part of October 1984. This was approximately one year and ten months before suit was filed. In response, plaintiffs assert that Sellors told them that he was a lawyer and an accountant and that they could rely upon him to analyze and evaluate the financial condition of the Freedom Spirit Shoppe. Thus, they contend, it was not until they had operated the business themselves for some period of time and received updated financial information that they knew or reasonably could have known that Sellors had improperly led them to place confidence in him and that information which he had given them was incorrect. This contention places in genuine dispute facts concerning the relationship between the parties and the reasonableness of plaintiffs' reliance upon what Sellors told them. Accordingly, the question of whether plaintiffs' securities claims are barred by limitations cannot be resolved short of trial. *See, e.g., Norris v. Wirtz,* 818 F.2d 1329, 1334 (7th Cir.1987); *O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313 (1986).

A separate order effecting the rulings made in this Memorandum is being entered herewith.

### ORDER

Upon the parties' various motions for partial summary judgment and in accordance with the memorandum entered herein, it is this 2nd day of November 1987

ORDERED

1. The motion for summary judgment filed by Robert and Frances Pretty against plaintiffs is granted insofar as it pertains to legal claims for monetary damages asserted by plaintiffs and judgment is entered in favor of the Prettys as to those claims;

2. The Prettys' motion for summary judgment is denied insofar as it pertains to plaintiffs' request for a rescission and that claim remains to be tried (by the Court without a jury);

3. Summary judgment is entered in favor of plaintiffs on the issues of whether James Sellor is an agent of RGT Enterprises, and whether RGT Enterprises, Inc. is an agent of VR Business Broker, Inc.;

4. Summary judgment is entered on behalf of all defendants on limitations grounds as to Counts IV and VI asserting claims for the sale of unregistered securities; and

5. The motions for partial summary judgment by defendants Sellors, RGT and VR Business Brokers on limitations grounds as to Counts I, II, III and V are denied.