931 F.2d 646
 NATIONAL FOOTBALL SCOUTING INC., a Missouri corporation;
Harry W. Buffington and Leslie Miller, Trustees of the
National Football Scouting Pension Plan; Superior
Hard-Surfacing Company, Inc., an Oklahoma corporation;
Harold West, Trustee of the Superior Hard-Surfacing Company,
Inc. Pension Plan, Plaintiffs-Appellants,
v.
CONTINENTAL ASSURANCE COMPANY, Defendant-Appellee.
 Nos. 89-5191, 90-5034.
 United States Court of Appeals,
Tenth Circuit.
 April 25, 1991.
As Modified on Denial of Rehearing
May 30, 1991.
 
 Steven E. Smith, Tulsa, Okl. for plaintiffs-appellants National Football Scouting, Inc., Harry W. Buffington and Leslie Miller, Trustees (James R. Hicks of Morrel, West & Saffa, Inc., for plaintiffs-appellants Superior Hard-Surfacing Co., Inc. and Harold West, Trustee, with him on the brief).
 Gary M. Elden, Chicago, Ill. (Darrell J. Graham and Marc S. Lauerman, of Grippo & Elden, on the brief) for defendant-appellee Continental Assur. Co.
 Before McKAY, LOGAN and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 National Football Scouting, Inc.[1] , a Missouri corporation with its principal office in Tulsa, Oklahoma, and the trustees of its pension plan, Harry Buffington and Leslie Miller (collectively "National"), brought the present action in the United States District Court for the Northern District of Oklahoma against Continental Assurance Company (CAC), an Illinois corporation, Morton & Company, Inc., an Arkansas corporation, and William C. Morton, Jr. In a twenty-nine page amended complaint, to which were attached some eighteen exhibits, National asserted ten claims against the defendants. The gist of the amended complaint was that the defendants had breached their fiduciary duties to National as imposed by the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. Sec. 1001, et seq. The amended complaint also contained several pendent state claims.
 
 
 2
 More specifically, National alleged that it had created a pension plan for its employees and in connection therewith had delivered pension fund monies to Morton, which monies were to be placed in CAC's pension investment fund, but that Morton thereafter converted these funds to his own use. It was further alleged that Morton at all times pertinent was acting as an agent for CAC. National sought recovery from all defendants in the sum of approximately $513,933.78.
 
 
 3
 About the same time, Superior Hard-Surfacing Co., Inc. and the trustee of its employees' pension plan, Harold West (collectively "Superior"), filed a similar action against CAC and Morton. The two actions were consolidated in the district court.
 
 
 4
 By answer, CAC denied the breach of any fiduciary duty to National or Superior and specifically denied that Morton was acting as its agent in his dealings with National and Superior "for relevant purposes of this suit." In this latter connection, CAC claimed that the actions of Morton in receiving and then embezzling the pension funds of National and Superior were outside the scope of his authority. In addition to four affirmative defenses, CAC also asserted a counterclaim against National and a cross-claim against Morton.
 
 
 5
 After extensive discovery, both National and Superior filed motions for summary judgment against CAC. CAC, in turn, filed motions for summary judgment on the claims of both National and Superior.[2] The several motions were referred to a magistrate, who in his report recommended that all motions for summary judgment be denied. In so doing, the magistrate was of the view that the question of whether CAC "may or may not be held directly or vicariously liable to [National] or Superior, [depended] on the resolution of genuine fact issues."
 
 
 6
 Pursuant to local rule, the parties had ten days to file objections to the magistrate's report and recommendation. Neither National nor Superior filed an objection. CAC, however, did. Upon a consideration of CAC's objection, the district court ruled that although CAC could be held liable for plaintiffs' losses under ERISA based on the doctrine of respondeat superior, Morton was not, as a matter of law, acting as CAC's agent in his handling of monies given him by either National or Superior. Alternatively, the district court held that if Morton was an agent for CAC, he was at the same time an agent for National and Superior. According to the district court, in either event, neither National nor Superior could recover from CAC.
 
 
 7
 Judgment was entered for CAC and against plaintiffs, the district judge stating "that plaintiffs take nothing by way of this action." Thereafter, plaintiffs' joint motion to reconsider and vacate the district court's order and judgment was denied. Pursuant to 28 U.S.C. Sec. 1291 and Fed.R.Civ.P. 54, National and Superior appeal the judgment entered.[3]
 
 
 8
 The magistrate's report and recommendation that all motions for summary judgment be denied merits a more detailed discussion. National filed two motions for summary judgment. The first sought summary judgment in its favor on its pendent state claims against CAC based on Morton's embezzlement of National's funds. In connection therewith, National argued that as a matter of law Morton was CAC's agent, and that CAC, as the principal, was therefore liable for Morton's embezzlement of funds received by Morton from National for placement in CAC's pension fund. The magistrate was of the view that National's pendent state claims were preempted by ERISA. It was on this basis that the magistrate recommended that National's motion for summary judgment on its pendent state claims be denied.
 
 
 9
 National filed a second motion for summary judgment based on CAC's alleged breach of a fiduciary duty owed National under ERISA. In thus arguing, National again contended that as a matter of law Morton was CAC's agent, and that under the doctrine of respondeat superior, CAC was liable for Morton's breach of his fiduciary duty. National further contended that CAC was directly liable for having violated its independent fiduciary duty under ERISA to supervise the activities of Morton. The magistrate agreed that "Morton was acting as a plan 'fiduciary,' as a matter of law, and that by embezzling plan funds he breached his fiduciary duty." However, the magistrate was of the view that, under the federal common law of agency, there were genuine issues of material fact bearing on the questions of whether Morton at the time of the embezzlement was CAC's agent and whether CAC properly supervised Morton. Accordingly, the magistrate recommended that National's second motion for summary judgment also be denied.
 
 
 10
 Based on his reasons for denying National's second motion for summary judgment, the magistrate also recommended that Superior's motion for summary judgment be denied. In like fashion, the magistrate recommended that CAC's motions for summary judgment dismissing National's and Superior's actions be denied. In sum, the magistrate was of the view that the issue of whether Morton was CAC's agent at the time of the embezzlement of funds and the issue of whether CAC adequately supervised Morton's activities could not be resolved on the basis of pleadings and depositions since there were genuine issues of material fact that could only be resolved by trial.
 
 
 11
 As mentioned earlier, National and Superior filed no objections to the magistrate's report and recommendation. However, CAC did file objections.
 
 
 12
 In its order granting CAC's motions for summary judgment and entering judgment dismissing the actions brought by National and Superior, overruling, in effect, the magistrate's recommendation that CAC's motions be denied, the district court, citing American Fed'n of Unions v. Equitable Life Assurance Soc'y, 841 F.2d 658, 665 (5th Cir.1988), recognized that in ERISA cases the doctrine of respondent superior could impose liability on a principal for the misdeeds of his agent. However, the district court concluded that based on the record before it "Morton was not CAC's agent for investment purposes." In so concluding, the district court held that there was no express authority, and that neither National nor Superior had presented any evidence of apparent authority. Alternatively, the district court ruled that under the limited powers of attorney given Morton by both National and Superior, Morton was their agent "as regards handling of plan assets." In this connection the district court, citing Cerniglia v. Pretty, 674 F.Supp. 1167, 1169 (D.Md.1987), observed that "a principal [National and Superior] injured by defalcation of a common agent [Morton] cannot sue the other principal [CAC]."
 
 
 13
 In this court CAC basically relies on three sets of documents as supporting the district court's grant of summary judgment in its favor on the question of Morton's agency: (1) a Group Annuity Contract, Account No. GP-9395, between Morton and CAC in which Morton is referred to as an "agent for certain qualified plans"; (2) certificates of participation issued to National and Superior by Morton in which Morton is also referred to as an "agent for certain qualified plans"; and (3) the so-called limited powers of attorney granted Morton by National and Superior.
 
 
 14
 The question on appeal is whether based on these three sets of documents the district court was justified in granting CAC's motions for summary judgment against both National and Superior, thereby dismissing their claims against CAC. The provision in the GP-9395 contract between CAC and Morton referring to Morton as an agent for certain qualified pension plans is of course not necessarily binding on National or Superior, since neither was a party to such contract. Similarly, the certificates of participation, which Morton gave National and Superior, would also not be conclusive evidence that Morton was the agent for National or Superior. Finally, in the limited powers of attorney granted Morton by National and Superior, Morton was simply empowered to handle pension fund assets only "for the purpose of applying such funds under Continental Assurance Company Group Annuity Policy GP-9395, or for such other purposes as the Trustees designate." There was no such other designation by the trustees of either plan. Counsel in their brief suggest that these limited powers of attorney were in fact prepared by CAC's attorney. And there is the suggestion in CAC's brief that some of these documents were required if the plan was to qualify for tax-exempt status under ERISA.
 
 
 15
 Be all that as it may, the real question is whether the record is such as to justify the granting of CAC's motions for summary judgment on the basis that Morton was not CAC's agent, or, if he was CAC's agent, on the basis that he was also the agent for National and Superior. The three sets of documents referred to above must be viewed in context of other material. And of course the starting point is the initial contract between CAC and Morton wherein CAC designated Morton as a general agent authorized to solicit and process CAC insurance policies and annuity pension plans. In its brief, CAC concedes that "Morton was its agent for the limited purpose of soliciting and processing applications for insurance policies and annuity contracts" (emphasis theirs).
 
 
 16
 All things considered, our study of the record leads us to conclude that the district court erred in determining that as a matter of law Morton was not the agent of CAC, or if he was the agent of CAC, that he was also the agent of National and Superior, and that in either event CAC was not liable under ERISA to the plaintiffs.[4] The question of agency, be it on the basis of actual authority or apparent authority, is ordinarily a question of fact. Gilmore v. Constitution Life Ins. Co., 502 F.2d 1344, 1350 (10th Cir.1974). In Gilmore we indicated that "[a]n issue of fact may arise from countervailing inferences which are permissible from evidence accepted as true." Id. at 1351 (quoting Frank v. Constitution Life Ins. Co., 519 P.2d 1206 (Colo.App.1974)).[5] In Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1382 (10th Cir.1980), we said that "[w]here different ultimate inferences may properly be drawn, the case is not one for summary judgment." And in Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 516 F.2d 33, 36 (10th Cir.1975), we noted that in reviewing a district court's grant of summary judgment, we, as an appellate court, "must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues."In sum, we do not believe the three sets of documents relied on by CAC justified the district court's granting CAC's motions for summary judgment. In so doing, we are not suggesting the ultimate outcome of this litigation. We are simply holding that the agency issue was not ripe for summary judgment.
 
 
 17
 Judgment reversed and case remanded for further proceedings.
 
 
 
 [1]
 National Football Scouting, Inc. is in the business of preparing athletic scouting reports on potential professional football players
 
 
 [2]
 Neither Morton & Company, Inc. nor William C. Morton, Jr. is a party to the present appeal. The parties to this appeal have conceded that Morton embezzled monies given him by National and Superior. The main issue raised by the motions for summary judgment was whether at the time of the embezzlement Morton was CAC's agent, or was the agent of National and Superior, or was the agent of all three
 
 
 [3]
 Apparently, the judgment entered did not dispose of all the claims or all the parties
 
 
 [4]
 National and Superior also argue in this court that under ERISA, CAC owed them a fiduciary duty which was independent of Morton's actions, i.e., that such duty existed even if there was no agency relationship between Morton and CAC. In its order the district court stated that the "primary issue is ... agency" and did not rule on any claim of National or Superior that under ERISA, CAC owed them a fiduciary duty regardless of the resolution of the agency issue
 
 
 [5]
 We also said in Gilmore that although a principal is not responsible for any and all acts of his agent, regardless of whether such are within or without his authority, at the same time a principal may not accept the benefit of his agent's endeavors and reject out of hand detriments arising therefrom